UNITED STATES of America, Appellee,

v.

Michael G. MUCKENTHALER,
Appellant.

UNITED STATES of America, Appellee,

v.

Roger E. STRUBLE, Appellant.

UNITED STATES of America, Appellee,

v.

Randy G. HOLLINGSHEAD, Appellant.

Nos. 78–1101, 78–1115 and 78–1172.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1978.
Decided Aug. 23, 1978.

242

Leonard W. Shefren, Omaha, Neb., argued, Norman Denenberg, Omaha, Neb., on brief, for appellants.

Thomas D. Thalken, Asst. U. S. Atty., argued, Edward G. Warin, U. S. Atty., Omaha, Neb., on brief, for appellee.

Before GIBSON, Chief Judge, and HEANEY and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

Roger E. Struble, Randy G. Hollingshead and Michael G. Muckenthaler were convicted of possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Muckenthaler and Hollingshead were sentenced to concurrent four-year terms on both counts, with a three-year parole term to follow in accordance with 21 U.S.C. § 841(b)(1)(A). Struble was adjudged a youth offender and sentenced to concurrent commitments under 18 U.S.C. § 5010(b). On appeal, all three contend that the District Court erred in failing to suppress evidence seized pursuant to a search warrant and in failing to grant their motion for acquittal at the close of the government's evidence. We affirm.

In the early morning of June 30, 1977, Struble called Ned Reynolds, a government informant, and asked Reynolds if he could get $250. Reynolds agreed to lend him the money. Later that same morning, Reynolds drove to Sergeant Bluff, Iowa, and met Struble at the apartment of Struble's sister. During their conversation in the apartment, Struble said that the money was to provide plane fare for a friend arriving from California. Reynolds then drove Struble to a truck stop that had a Western Union office. Struble entered the office and sent a money order to a "Marti Hoffman" in Anaheim, California, in the amount of $260. They returned to the apartment where Struble gave Reynolds some marijuana in payment for the $250. During their conversation, Struble stated that about one-half pound of cocaine would be arriving at Eppley Airfield in Omaha, Nebraska, at 4:15 P.M. Struble offered to sell Reynolds one to four ounces of the cocaine for $2,000 an ounce.

Reynolds returned to his home in Onawa, Iowa, and contacted Special Agent Robert B. Upchurch of the Drug Enforcement Administration. Reynolds informed him of the conversation with Struble, the money order, and the expected arrival of the cocaine. After verifying the transmission of the money order, Upchurch set up surveillance at Eppley Airfield.

Later that afternoon, Struble and his girlfriend, Wanda Androy, borrowed a pickup truck and drove to Eppley Airfield. Androy testified that they were going to pick up Muckenthaler. They arrived at the deplaning area of the terminal when a flight from California was arriving. Muckenthaler did not arrive on the flight. Struble then proceeded to the baggage claim area and waited at a carousel for the baggage from the California flight. After all the luggage that arrived had been picked up by other passengers, Struble went to a pay telephone which was located directly adjacent to the baggage area and placed a telephone call to Muckenthaler's residence in

California. The telephone was one of a group of four surrounding a post. The telephones were not enclosed by glass or any other material. Struble learned that Muckenthaler had missed the flight and would be on a flight from Los Angeles that arrived in Omaha at 10:35 P.M.

Meanwhile, Upchurch had positioned himself across from Struble leaning against one of the other telephones. Upchurch overheard those portions of Struble's conversation in which he referred to an individual known as Marti, discussed a brown bag and indicated that he would call back in one-half hour. Upchurch did not use any kind of listening device.

Struble made a second call approximately one-half hour later to Muckenthaler's California residence. Upchurch again was in a position to overhear portions of Struble's conversation. During the second call, Struble repeated a series of numbers that appeared to be a telephone number. Struble made a final call to a local number in which Upchurch heard Struble refer to Marti and indicate that he was waiting for a plane that had been delayed. Struble and Androy then left the airport to visit friends in Omaha. After they left, Upchurch sought and obtained a search warrant. The warrant authorized Upchurch to search the "persons and/or baggage being met at Eppley Airfield, Omaha, Nebraska, by Roger Struble on the evening of June 30, 1977" for cocaine.

Struble and Androy returned to the airport about 9:30 P.M. They immediately went to the upstairs deplaning area in the section that was cordoned off for the 10:45 P.M. flight from Los Angeles. They met Muckenthaler and Hollingshead at the gate. Muckenthaler was carrying a brown leather-type suitcase. Hollingshead was carrying a yellow suede-type suitcase. All four left the deplaning area together and walked toward the exit door of the terminal. Upchurch intercepted them at the door. He identified himself as an agent of the Drug Enforcement Administration and explained that he had a search warrant covering the passengers and the suitcases. The group was led to a security area where the search was conducted. The search of the yellow suitcase carried by Hollingshead revealed a Shower-to-Shower talcum powder bottle that contained cocaine. Muckenthaler had an airline ticket issued in the name of "M. Hoffman" on his person.

I.

The appellants contend, initially, that the District Court erred in failing to suppress the evidence seized pursuant to the search warrant because the search warrant was invalid. They argue that the warrant was not based on probable cause, that the evidence used to support the warrant was unconstitutionally obtained and that the warrant was overbroad.

The affidavit for the search warrant sets out that Upchurch, the affiant, is a special agent for the Drug Enforcement Administration. Upchurch relates that he received information from a confidential informant that a Roger Struble would be receiving a large quantity of cocaine from California. He notes that the confidential informant has proven reliable on numerous occasions in the past three months. The informant stated that Struble was to meet two parties at Eppley Airfield who were arriving from Los Angeles, California, with the cocaine at approximately 4:10 P.M. on June 30, 1977. The informant also stated that Struble had gone to a Western Union office in Sioux City, Iowa at approximately 7:45 A.M. and sent a money order for about $250 to a party named Hoffman in Anaheim, California. The money order was a partial payment for the cocaine. Struble was described as a white male, approximately twenty-one years old, five feet nine inches tall, 150 pounds, with medium blond hair that was parted in the middle, crooked teeth and a severe acne condition on the face.

Upchurch states that he checked the Western Union money order records at Sioux City and confirmed that Struble sent a money order in the amount of $260 to a Marti Hoffman in Anaheim, California, at 7:49 A.M. on June 30, 1977.

Upchurch goes on to relate his surveillance of Eppley Airfield. He observed an individual meeting Struble's description enter the airport about 4:00 P.M. He and a young female accompanying him proceeded to a deplaning area and appeared to wait for someone. They then left the deplaning area and went to the baggage area. After all the baggage had been picked up, Struble made a call at a pay telephone. Upchurch positioned himself so that he could overhear the conversation, but he used no listening devices. Upchurch heard Struble ask for a 714 area code number, which is the area code for Anaheim, California. He also heard Struble ask for a person named Marti and refer to a brown bag. During a second call, made one-half hour later, Struble recited a telephone number. A third call was made immediately after the second one. Struble asked for a person named Mary Lou. He said that he was at the airport because something had been delayed until a certain time. Upchurch did not hear what that time would be. Struble asked directions to the party's residence. He and his companion then left the terminal and drove away.

On the basis of this information, Upchurch concluded that there was probable cause to believe that in the late evening hours of June 30, 1977, at Eppley Airfield, Struble would meet persons or baggage from Los Angeles, California, containing cocaine.

■ The probable cause necessary to support the search warrant depends on the hearsay information supplied by the unnamed informant.[1] Thus, the sufficiency of the affidavit must be determined by application of the two-prong test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The test requires that the affidavit disclose some of the underlying circumstances showing the basis of the informant's information and disclose the reasons for the affiant's belief in the credibility of the informant and the reliability of his information. *See Aguilar v. Texas, supra* at 114, 84 S.Ct. 150.

■ The affidavit discloses the reasons for the affiant's belief in the reliability of the informant. It recites that the informant had been proven reliable on numerous occasions in the past three months. The fact that an informant has previously given accurate information establishes his reliability. *United States v. Scott*, 545 F.2d 38, 40 (8th Cir. 1976), *cert. denied*, 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977); *United States v. Cummings*, 507 F.2d 324, 328 (8th Cir. 1974).

The principal question is whether the affidavit was sufficient to inform the magistrate of the underlying circumstances from which the informant reached his conclusions. The affidavit does not reveal the manner in which the informant gathered his information. Our inquiry turns, then, to whether the magistrate could reasonably infer that the information was gained in a reliable fashion because it was sufficiently detailed and corroborated. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Cummings, supra* at 328. The Supreme Court in *Spinelli* utilized the detail provided by the informant in *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), as "a suitable benchmark." *Spinelli v. United States, supra* at 416, 89 S.Ct. 584.

■ Using *Draper* as a standard, we are satisfied that the affidavit was sufficiently detailed and corroborated to allow an inference of reliability.

The informant stated that Struble had sent a money order for approximately $250 to a person by the name of Hoffman in Anaheim, California. It was sent from a Western Union office in Sioux City about 7:45 A.M. on June 30, 1977. Subsequent investigation revealed the accuracy of this information and this corroboration is contained in the affidavit. The informant also stated that Struble would be at Eppley Airfield in Omaha, Nebraska, at approximately 4:10 P.M., to meet two parties arriv-

---

1. Although Reynolds was the informant and his information was gathered by personal observation, this fact was not stated in the affidavit.

ing from Los Angeles, California. Struble was described in great detail. Surveillance of the airport confirmed that an individual meeting the description of Struble arrived at the airport at approximately 4:00 P.M. This corroboration was also included in the affidavit. The informant's statements were further corroborated by those portions of the telephone conversations indicating that Struble was waiting for a flight originating in California.

The appellants also argue that the evidence used to support the warrant was unconstitutionally obtained. Relying on *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), they contend that Upchurch, by positioning himself so as to overhear parts of Struble's telephone conversations, conducted an unlawful search and seizure of the conversations.

Our primary inquiry is whether Struble had a reasonable expectation of privacy upon which he justifiably relied since "[w]hat a person knowingly exposes to the public,[2] * * * is not a subject of Fourth Amendment protection." *Katz v. United States, supra* at 351, 88 S.Ct. at 511. In *Katz,* FBI agents had attached an electronic listening and recording device to the outside of an enclosed telephone booth and had overheard telephone conversations of a suspected gambler. The Supreme Court held that the government's activities violated the petitioner's reasonable expectation of privacy and, thus, constituted a search and seizure within the meaning of the Fourth Amendment.

In this case, however, Struble was talking on a telephone attached to a post around which were three other telephones. The telephones were located in a public place and none of them was enclosed. Upchurch was in a position where another individual would normally be expected to be. *Compare United States v. Case,* 435 F.2d 766 (7th Cir. 1970), *with United States v. Llanes,* 398 F.2d 880, 883–884 (2d Cir. 1968), *cert. denied,* 393 U.S. 1032, 89 S.Ct. 647, 21 L.Ed.2d 576 (1969). *Cf. United States v. Carroll,* 337 F.Supp. 1260 (D.D.C.1971). Any individual in that position was likely to

overhear portions of a conversation at any of the other telephones. *See United States v. Eisler,* 567 F.2d 814, 816 (8th Cir. 1977). Upchurch did not utilize any type of listening or amplification device. "As the agent was located in a public place and overheard the conversation * * * without the use of any amplification device," we conclude that Struble did not have a reasonable expectation of privacy. *United States v. McLeod,* 493 F.2d 1186, 1188 (7th Cir. 1974); *United States v. Fuller,* 441 F.2d 755, 760–761 (4th Cir.), *cert. denied,* 404 U.S. 830, 92 S.Ct. 73, 30 L.Ed.2d 59 (1971).

The appellants finally argue that the warrant was overbroad in that it fails to describe with sufficient particularity the persons or baggage to be met by Struble at Eppley Airfield on June 30, 1977.

The constitutional standard for particularity of description in a search warrant is met if the description is sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized. *Steele v. United States,* 267 U.S. 498, 503–504, 45 S.Ct. 414, 69 L.Ed. 757 (1925); *United States v. Davis,* 557 F.2d 1239, 1248 (8th Cir.), *cert. denied,* 434 U.S. 971, 97 S.Ct. 537, 50 L.Ed.2d 632 (1977); *United States v. Johnson,* 541 F.2d 1311, 1313 (8th Cir. 1976). Accordingly, the degree of specificity required is flexible and may vary depending on the circumstances and the type of items involved. *United States v. Davis,* 542 F.2d 743, 745 (8th Cir.), *cert. denied,* 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976). The underlying measure of adequacy in the description is whether, given the specificity in the warrant, a violation of personal rights is likely. *United States v. Johnson, supra* at 1313.

In this case, the warrant was as specific as possible under the circumstances. Although Upchurch had probable cause to believe that cocaine was being delivered, he was unable to ascertain either the actual identities of the persons arriving on the Los Angeles flight or the nature of their baggage. By limiting the search warrant to

those persons or baggage "being met" by Struble at the airport, Upchurch could with reasonable effort ascertain and identify the persons or baggage to be searched. Upchurch made no attempt to stop and search the appellants until it was clear that Muckenthaler and Hollingshead had "met" Struble at the airport. The warrant was not executed until Struble greeted Muckenthaler and Hollingshead at the deplaning area and the group walked through the terminal toward the exit together. Thus, the language used in the search warrant was sufficiently definite.[2]

## II.

The appellants also contend that the District Court erred in failing to grant their motion for acquittal because there was insufficient evidence to establish an agreement between the parties to distribute cocaine.

▮ In reviewing a jury's guilty verdict, we view the evidence in the light most favorable to the government, *United States v. Wofford,* 562 F.2d 582, 585 n. 1 (8th Cir. 1977), and take as established all reasonable inferences to support the conviction. *United States v. Overshon,* 494 F.2d 894, 896 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). We recognize that the agreement in conspiracy need not be express, *United States v. Jackson,* 549 F.2d 517, 530 (8th Cir.), *cert. denied,* 430 U.S. 985, 98 S.Ct. 1449, 52 L.Ed.2d 379 (1977), and may be established by circumstantial evidence. *Id.; United States v. Powell,* 564 F.2d 256, 258 (8th Cir. 1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 495 (1978).

The evidence establishes that Struble made numerous telephone calls to Muckenthaler's residence in Anaheim, California, prior to June 30, 1977. On June 30, 1977,

Struble indicated to Reynolds, the informant, that he would be receiving a large quantity of cocaine at Eppley Airfield later that evening and that Reynolds could purchase several ounces of this quantity at $2,000 an ounce. Struble also sent the $260 money order to a "Marti Hoffman" in Anaheim, California, and this money order was sent to insure his plane fare. Wanda Androy testified that she and Struble went out to Eppley Airfield to pick up Muckenthaler. While at the airport, Struble made several telephone calls to Muckenthaler's residence to inquire about "Marti" and to discuss a brown bag.

Struble met Muckenthaler and Hollingshead at the airport. They had both flown in on the same flight from Los Angeles and had sat next to each other on the plane. They had known each other for some time. Muckenthaler was carrying a brown suitcase. Struble, Muckenthaler and Hollingshead proceeded through the terminal together and were heading for the exit before they were stopped. The search of Muckenthaler revealed that he was traveling under the name of "M. Hoffman." The search of Hollingshead revealed that he was carrying 147.09 grams of cocaine.

▮ From this evidence, the jury could reasonably infer that Struble and Muckenthaler had agreed to distribute cocaine in the Sioux City area. Struble arranged for the delivery of the cocaine and would be instrumental in its distribution as evidenced by his offer to Reynolds. Muckenthaler was responsible for acquiring the cocaine in California and transporting it to Eppley Airfield. Hollingshead's role in the conspiracy was to assist Muckenthaler in transporting the cocaine. Although Struble knew Muckenthaler and Muckenthaler knew Hollingshead, there was no need to show that Hollingshead knew Struble.

---

**2.** The search of the luggage in this case is distinguishable from the searches involved in *United States v. Schleis,* —— F.2d —— (8th Cir. 1978), and *United States v. Stevie,* —— F.2d —— (8th Cir. 1978), insofar as it involved a search warrant. Search warrants are preferred to warrantless searches since they represent the informed and deliberate determinations of a

magistrate rather than the often hurried action of an officer. *See Katz v. United States,* 389 U.S. 347, 356–357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Aguilar v. Texas,* 378 U.S. 108, 110–111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. Christenson,* 549 F.2d 53, 55 (8th Cir. 1977).

In order to convict a defendant of conspiracy, it is not necessary to prove that he knew all of the conspirators or that he was aware of all details of the conspiracy. A showing that the defendant knowingly contributed efforts in furtherance of it is sufficient.

*United States v. Schmaltz,* 562 F.2d 558, 560 (8th Cir.), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 315 (1977). The intent to distribute may be inferred from the amount and value[3] of the cocaine in Hollingshead's possession, *see United States v. Powell, supra* at 259, and Struble's offer to sell part of the cocaine to Reynolds.

We conclude that there was sufficient evidence to sustain the conviction.[4]

The judgment is affirmed.

---

3. The street value of the cocaine was estimated to be $100 per gram.

4. The appellants also contend that the government failed to submit sufficient independent evidence to connect any of the appellants to the alleged conspiracy, particularly Muckenthaler. Thus, they argue that any out-of-court declarations of one appellant could not be admitted against the other appellants for failure to establish a prima facie case of conspiracy. *See United States v. Anthony,* 565 F.2d 533, 536 (8th Cir. 1977). We disagree. With respect to Muckenthaler, the independent evidence shows repeated telephone calls from Struble to his residence; that he possessed both Struble's and Hollingshead's telephone numbers; that he arrived from Los Angeles with an airline ticket in the name of "M. Hoffman" after Struble had wired $260 to a "Marti Hoffman" in Anaheim, California; that Struble anticipated his arrival as overheard by Upchurch; that he accompanied Hollingshead from Los Angeles to Eppley Airfield; and that he accompanied both Struble and Hollingshead through the terminal and attempted to leave with them. This is sufficient independent evidence to tie Muckenthaler to the conspiracy. *See United States v. Durland,* 575 F.2d 1306, 1308 (10th Cir. 1978); *United States v. McManus,* 560 F.2d 747, 750 (6th Cir. 1977).

While much of this same evidence implicates Struble and Hollingshead, additional independent evidence exists to connect them to the conspiracy. Hollingshead was in possession of the cocaine which was the subject of the conspiracy. Struble admitted that he was going to pick up cocaine at Eppley Airfield and offered to sell some to Reynolds.

We note that this action was tried before our decision in *United States v. Bell,* 573 F.2d 1040 (8th Cir. 1978), in which we held that the District Court must find from a preponderance of the independent evidence that the out-of-court statements were made during a conspiracy to which the declarant and the other defendants were parties. Our holding in *Bell,* however, is to be applied prospectively. *United States v. Bell, supra; United States v. Macklin,* 573 F.2d 1046, 1049 (8th Cir. 1978).