**UNITED STATES of America, Appellee,**

v.

**Thomas B. COPPAGE, Appellant.**

**No. 80–1345.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1980.
Decided Dec. 5, 1980.

684

Vernon R. Dawdy, Fenton, Mo., for appellant.

Robert D. Kingsland, U. S. Atty., Richard L. Poehling, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before HENLEY, McMILLIAN, Circuit Judges, and BECKER,* Senior District Judge.

McMILLIAN, Circuit Judge.

Thomas B. Coppage appeals from a judgment entered in the district court [1] finding him guilty of one count of possession of a Schedule II controlled substance (methamphetamine) with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and one count of manufacture of a Schedule II controlled substance (methamphetamine) in violation of 21 U.S.C. § 841(a)(1). Appellant was sentenced to a term of three years imprisonment, plus a special parole term of two years on each count, with the sentences to be served consecutively. For reversal appellant argues that (1) the district court erred in denying his motion to suppress certain evidence, (2) the district court relied on misleading information in imposing sentence, and (3) the evidence was insufficient to support the court's verdict finding appellant guilty of possession of a Schedule II controlled substance with intent to distribute. For the reasons discussed below, we affirm the judgment of the district court.

This case was tried to the district court on written stipulations of fact. Appellant, using a false name, purchased a five gallon quantity of a chemical known as phenylacetone for $5,200 from a company in Alsip, Illinois on January 18, 1980. Phenylacetone is a precursor chemical for the manufacture of methamphetamine, a Schedule II controlled substance. The purchase was made under the surveillance of the Drug Enforcement Administration (DEA). Appellant placed the phenylacetone into the trunk of his automobile and was followed by DEA agents to the facility where he worked as a chemist. The DEA agents maintained surveillance of appellant's auto and observed a

---

* The Honorable William H. Becker, United States Senior District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court for the Eastern District of Missouri.

security guard at the facility inspecting the interior and trunk areas of all departing vehicles. The agents approached the security guard and, after identifying themselves, were informed that company policy required the search of all vehicles for stolen products belonging to the company.

The agents drew the guard's attention to appellant's vehicle and inquired whether he knew an individual by the name of Thomas Coppage. The guard identified the vehicle as belonging to appellant, Thomas Coppage, who worked as a chemist for the company. The agents then asked the guard to inform them of any items observed in the trunk of appellant's vehicle during the course of the routine company security check. During the check the guard noticed a container in the trunk which was identical in appearance to the one containing phenylacetone which was observed being placed in the trunk of appellant's vehicle in Alsip, Illinois. The guard identified the driver of the vehicle as appellant. The agents then followed appellant's vehicle to his residence at 1417 Bellevue, and appellant entered the house.

Investigation by the agents disclosed that appellant had made prior purchases of various chemicals, including methylamine and ethyl ether, and chemical apparatus under the name of his employer. These chemicals and apparatus are consistent with and used for the manufacture of methamphetamine.

On January 25, 1980, appellant left his residence at 1417 Bellevue carrying a seal identical to the one on the container of phenylacetone he had purchased and discarded it in a trash container. One of the agents at that time could observe a can of ether under the back porch of appellant's residence and detected the odor of methylamine coming from the area of the residence. The agents had ascertained that appellant was not a licensed registrant to manufacture or handle methamphetamine.

A federal search warrant for appellant's residence was issued and executed on January 25, 1980. DEA agents seized a quantity of methamphetamine, numerous other chemicals, apparatus and chemical notes detailing the manufacturing process for meth-

amphetamine. In the opinion of the DEA agents and a forensic chemist employed by DEA, the methamphetamine, chemicals, apparatus, notes and literature found at appellant's residence demonstrates an intent to distribute methamphetamine rather than merely possess it for personal consumption.

Appellant first argues that the district court erred in denying his motion to suppress the evidence seized during execution of the search warrant, because the supporting affidavits of the DEA agents did not show probable cause that methamphetamine was present or in manufacture at appellant's home. As discussed above, the agents presented credible evidence that appellant was a chemist, that he had purchased chemical ingredients for methamphetamine under an assumed name, that the odor of one of those ingredients (methylamine) was emanating from the house, and that appellant exited his house with a seal identical to that on the container of phenylacetone he had purchased. Nevertheless, appellant contends that the information within the four corners of the affidavits was not adequate to support the magistrate's determination of probable cause. We disagree.

The proper approach to review of a magistrate's determination of probable cause in a case like this was set forth in *United States v. Ventresca*, 380 U.S. 102, 108–9, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965):

[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to

discourage police officers from submitting their evidence to a judicial officer before acting.

. . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

■ In this case, as in *Ventresca*, the affidavits describe a number of underlying circumstances supporting the DEA agents' belief that manufacture of methamphetamine was taking place at the place to be searched. The sources of the information, including business records and observation by DEA agents, had apparent credibility. The magistrate who issued the search warrant had ample grounds for doing so. *See United States v. Gordon*, 580 F.2d 827, 832–3 (5th Cir.), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978); *United States v. Moore*, 452 F.2d 569 (6th Cir. 1971), *cert. denied*, 407 U.S. 910, 92 S.Ct. 2435, 32 L.Ed.2d 684 (1972).

In asserting absence of probable cause, appellant attempts to draw an analogy between this case and two others: *United States v. Taylor*, 599 F.2d 832 (8th Cir. 1979), in which the court suppressed evidence obtained under a search warrant because the warrant had been issued on the basis of information inadequate to create probable cause and *United States v. Failla*, 343 F.Supp. 831 (W.D.N.Y.1972), in which an evidence obtained after a warrantless arrest without probable cause was suppressed. But in both cases the information

supporting the warrant was far weaker than here. In *United States v. Taylor, supra*, 599 F.2d 832, the affidavits supporting the warrant were fatally defective because they failed to make a specific connection between the alleged criminal activity and the specific place to be searched. In this case the chemical odors, identification of the defendant and surveillance of his movements all point to the presence of the alleged criminal activity at the location set forth on the search warrant. In *United States v. Failla, supra*, 343 F.Supp. 831, the court held defective an arrest made on credible information that the defendant under an assumed name had obtained a single ingredient that could be used in making a controlled substance and was observed working with laboratory equipment. That evidence was held to be less than probable cause. The information in this case supporting a probable cause finding was much more substantial, including purchase under a false name of a number of different precursor chemicals to the controlled substance, presence of the odor of one of the precursor chemicals, and the discarding by appellant of a seal identical to that found on the container of another precursor chemical. *Cf. United States v. Noreikis*, 481 F.2d 1177 (7th Cir. 1973), *cert. denied in part and judgment vacated in part on other grounds*, 415 U.S. 904, 94 S.Ct. 1398, 39 L.Ed.2d 461 (1974) (probable cause for search found when chemical precursors to a controlled substance were observed entering premises).

■ Next appellant takes the position that the warrant did not describe with particularity the items to be seized and therefore amounted to a general warrant prohibited by the Fourth Amendment. *See Andersen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976); *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (opinion of Stewart, J.).

The constitutional standard for particularity of description in a search warrant is met if the description is sufficiently definite so as to enable the officer with

the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized. *Steele v. United States*, 267 U.S. 498, 503–504, 45 S.Ct. 414 [416–417], 69 L.Ed. 757 (1925); *United States v. Davis*, 557 F.2d 1239, 1248 (8th Cir.), *cert. denied*, 434 U.S. 971, 97 [98] S.Ct. 537 [523], 50 [54] L.Ed.2d 632 [461] (1977); *United States v. Johnson*, 541 F.2d 1311, 1313 (8th Cir. 1976). Accordingly, the degree of specificity required is flexible and may vary depending on the circumstances and the type of items involved. *United States v. Davis*, 542 F.2d 743, 745 (8th Cir.) *cert. denied*, 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976). The underlying measure of adequacy in the description is whether, given the specificity in the warrant, a violation of personal rights is likely. *United States v. Johnson, supra* at 1313.

*United States v. Muckenthaler*, 584 F.2d 240, 245 (8th Cir. 1978). Measured against this standard there can be no question that the warrant in the present case was particular enough in directing the agents to seize

> a quantity of methamphetamine, a Schedule II controlled substance, [and] any and all chemicals, chemical equipment, . . . books, records, chemical equipment, and personal papers relating to the manufacture and distribution of methamphetamine and the purchase of component chemicals and equipment which are contraband and fruits and instrumentalities of the commission of a crime which is in violation of [21 U.S.C. § 841(a)(1)].

This language warrants seizure of methamphetamine and certain things used in the manufacture of methamphetamine.[2] It does not give government agents a green light for rummaging through appellant's belongings but only for seizure of specific material directly relating to the manufacture of methamphetamine and violation of a particular statute. In the circumstances of this case the language of the warrant described the things to be seized with sufficient particularity to protect appellant's right to be free of general searches of his belongings.

■ Finally, appellant contends that an unlawful search took place when the plant guard inspected his automobile's trunk and described the contents to the DEA agents. Because the agents then used this information in their affidavits supporting the search warrant, appellant argues that the warrant itself was tainted and that the items seized under the warrant were fruits of the poisoned tree. We need not address the claim that an unlawful search took place, because we find that the agents had an independent source for the information needed for the search warrant and that the search warrant was therefore not tainted. *See United States v. Stover*, 565 F.2d 1010 (8th Cir. 1977); *United States v. Sor–Lokken*, 557 F.2d 755, 758 (10th Cir.), *cert. denied*, 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 181 (1977); *Peterson v. United States*, 411 F.2d 1074, 1078 (8th Cir.), *cert. denied*, 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199 (1969). The only information obtained in the trunk inspection and later used as predicate for issuance of the search warrant was that appellant was in possession of a five gallon container of phenylacetone. But the agents knew by independent surveillance that appellant had purchased this material and that he had left his house carrying a seal which looked like the one on the container. Indeed, as appellant points out, the mere possession of the material in the trunk of the car would provide only little support for issuing a warrant for search of appellant's house. The critical information supporting the warrant was instead that appellant purchased the precursor chemical and had it in his house. The agents obtained this information independently of the trunk inspection, and that inspection would not taint the other evidence merely because it encouraged the agents to pursue their investiga-

---

**2.** Of course, the warrant could have listed the specific chemicals and records involved; it is usually possible for a description to be made more specific. In other circumstances, for example, where a search may touch areas involv-

ing first amendment concerns, greater particularity should be required. *See Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1975).

tion. *United States v. Cella*, 568 F.2d 1266, 1284–87 (9th Cir. 1977).

Appellant alleges that the district court was misled as to the manufacturing capacity of the laboratory and the products seized. Appellant presented his claim of misleading information to the district court at the time of sentence. Nothing in the record indicates that the court relied on inaccurate data and we do not think it did so.

Appellant finally argues that the evidence was insufficient to support a finding of guilty of possession with intent to distribute. Appellant's theory is that, while intent to distribute may be inferred from the quantity of drugs in possession, *United States v. Hill*, 589 F.2d 1344 (8th Cir.), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979), most of the products seized from appellant's residence were potential methamphetamine as opposed to finished product methamphetamine. Therefore, the theory continues, the intent cannot be inferred in appellant's case. We must disagree. The court had before it evidence including the opinions of a chemist and two law enforcement agents that an intent to distribute must be inferred from the quantity and nature of chemicals, apparatus, notes and literature appellant had in his possession.

Accordingly, the judgment of the district court is affirmed.