UNITED STATES of America, Appellee,

v.

**Roderick L. LeBRON, Jr., Appellant.**

No. 83–1074.

United States Court of Appeals,
Eighth Circuit.

Submitted June 17, 1983.

Decided March 5, 1984.

Timothy J. Cuddigan, P.C., Marks, Clare, Hopkins, Rauth & Cuddigan and James Schaefer of the firm of Troia & Schaefer, Omaha, Neb., for appellant.

Ronald D. Lahners, U.S. Atty., D. Neb., Joseph F. Gross, Jr., Asst. U.S. Atty., D. Neb., Omaha, Neb., for appellee.

Before LAY, Chief Judge, BROWN, Senior Circuit Judge,* and ARNOLD, Circuit Judge.

LAY, Chief Judge.

Roderick LeBron was convicted under 26 U.S.C. §§ 5861(d) and 5871 (1976) for knowingly possessing firearms that had not been registered to him.[1] On appeal, LeBron asserts, *inter alia*, that the search of his home and seizure of the firearms was pursuant to an illegal warrant. We find that the warrant was impermissibly broad and that the seizure of the firearms was improper; we therefore reverse and remand to the district court for further proceedings.

*Background*

The search warrant was issued on June 9, 1982, by Judge Pittman of the Douglas County Municipal Court, Omaha, Nebraska. The warrant was issued upon presentation of an affidavit subscribed by Officer Tomsheck of the Omaha Police Department.

The affidavit alleged, in part, the following facts. In February and March of 1982, the Bureau of Alcohol, Tobacco, and Firearms (BATF), in conjunction with the Omaha Police Department, was investigating the fencing of stolen property in the Omaha area. In the course of the investigation, an informant introduced Special Agent Petersen, BATF, to Durke Dailey. Dailey fenced stolen property, and on several occasions he sold or offered to sell stolen items to Agent Petersen. The informant also was responsible for supplying Agent Petersen with information about LeBron, including that LeBron was an active purchaser of stolen property. On March 12, 1982, in Agent Petersen's presence, LeBron agreed to purchase a Panasonic large screen television set and a Sony video cassette recorder (VCR) from Dailey. During this transaction, Dailey freely discussed the fact that the items were hot and were from the Omaha area. Agent Petersen observed the serial numbers on these items, respectively, TKZ178623 and 23486. A surveillance team observed LeBron return to the meeting place later that day, load the television and VCR into a van, and unload it at his home. Subsequent investigation revealed that items matching these descriptions had been reported as lost or stolen.

On June 4, 1982, the informant introduced Agent Petersen to Jesse Chant; Chant showed Petersen a Sylvania VCR with a sticker on it reading "Benson High School, Media Center." Subsequent investigation revealed that a Sylvania VCR, serial number 8300933 had been reported stolen from the Media Center of Benson High School. Moreover, Chant admitted that the VCR was stolen. The informant directed Chant to LeBron in order to sell the VCR and Chant later relayed to the informant that he had sold the Sylvania VCR to LeBron. On June 7, 1982, LeBron admitted to the informant that he still possessed the Sony VCR and the Panasonic large screen television set which he had purchased from Dailey in March. On June 8, 1982, LeBron told the informant that he was seeking additional stolen VCR's like the Sylvania VCR he had purchased recently from Chant.

The warrant described LeBron's residence in detail and authorized a search of the residence for:

(1) 1 Sony Video Cassette Recorder, serial # 23486;

(2) 1 Panasonic Large Screen · Television Set, serial # TKZ178623;

---

* The Honorable Bailey Brown, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit.

1. LeBron received a three year suspended sentence, a $5,000 fine, and was placed on probation for two years.

(3) 1 Sylvania Video Cassette Recorder, serial # 8300933;

(4) any records which would document illegal transactions involving stolen property;

(5) and other property, description unknown, for which there exists probable cause to believe it to be stolen.

The search team was comprised of approximately eight Omaha Police Department officers and two special agents from the BATF. The officers served the warrant at LeBron's residence at approximately 10:00 a.m. Upon entering the premises, the officers observed a Panasonic large screen television set, a Sony VCR and a Sylvania VCR. The serial numbers on the two VCRs were identical to the numbers on the warrant. The large screen television set was the same brand and make as the one described in the warrant; however, the serial number was not the same as the one listed in the warrant. Despite the variance, all three items were seized.

On the basis of the presumed authority of the warrant, the officers continued their search of the house. While searching LeBron's bedroom, two officers observed an overhead storage closet, the outside dimensions of which were approximately five feet by four feet. Officer Blecha opened the closet and, utilizing an available step ladder, observed an "enormous" number of firearms (approximately 262), including the ten firearms charged in the indictment, and the subject of the Motion to Suppress at issue here.

Adopting the magistrate's findings, the district court found that the officers had identified and seized the three items specifically described in the warrant almost immediately upon entering the LeBron home. The district court concluded that the warrant's authorization of a search for "any records which would document illegal transactions involving stolen property" was a valid description of an acceptable generic class. *See, e.g., United States v. Johnson,* 541 F.2d 1311 (8th Cir.1976). The court then held that the observation and seizure of the guns while the officers were executing this clause were valid under the plain view doctrine. The court concluded that the warrant did not unduly threaten a violation of LeBron's personal rights under the Fourth Amendment.

*Discussion*

On appeal, LeBron contends that, other than the three specified items, the warrant fails to describe the property to be seized with the particularity required by the Fourth Amendment. Specifically, LeBron asserts that the fourth and fifth clauses of the warrant are impermissibly broad. He urges that the search should have ceased immediately upon the officers' seizure of the first three items listed in the warrant.

At the hearing before the magistrate, the government argued that the entire warrant was valid and that the guns were admissible under the plain view doctrine. At oral argument before this court, however, the government essentially conceded that the fifth clause was impermissibly broad. We agree. The warrant's authorization of a search for "other stolen property" allows a general search, contrary to the Fourth Amendment. A valid warrant should describe the things to be taken and the place to be searched with particularity such that it provides a guide to the exercise of informed discretion of the officer executing the warrant. *Cf. Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). The Fourth Amendment's prohibition of general warrants is to prevent an exploratory rummaging of a person's belongings. Acknowledging this purpose, in *United States v. Johnson,* 541 F.2d 1311 (8th Cir.1976), this court observed that "[t]he underlying measure of adequacy in the description is whether given the specificity in the warrant, a violation of personal rights is likely." *Id.* at 1313.

Applying this standard, courts generally approve warrants if they provide reasonable guidance to the exercise of informed discretion. Similarly, when it is impossible to describe the fruits of a crime, approval has been given to a description of a generic class of items. *See, e.g., United States v.*

*Scharfman,* 448 F.2d 1352 (2d Cir.1971), *cert. denied,* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972); *Spinelli v. United States,* 382 F.2d 871 (8th Cir.1967), *rev'd on other grounds,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). But the general description of "property ... believe[d] to be stolen" is not a description of a generic class. In fact, it is not descriptive at all. It is simply conclusory language. No guidelines are provided to guide the officers in their execution of the warrant or to limit their discretion. No means of distinguishing between stolen property and property that is not stolen is delineated; moreover, the distinction is not one that is readily apparent. These directions provide no protection against subjecting a person's lawfully held property to a general search and seizure. Such a general authorization allows officers to search indiscriminately throughout one's house and to seize anything they please.

Alternatively, the government urges that the admission of the firearms can be upheld by an application of the severance doctrine. *See United States v. Fitzgerald,* 724 F.2d 633 (8th Cir.1983) (en banc).[2] Under this theory, the government urges us to sever the fifth clause from the warrant and uphold the remainder. The government contends that the fourth clause of the warrant is valid and urges that, if the officers were searching for records when they came upon the firearms, the latter should be admitted under the plain view doctrine. Alternatively, the government contends that the officers were not searching merely for records when they came upon the firearms. Relying on the variance in the serial numbers of the large screen television set found and the one described in the warrant, the government urges that the officers had a continuing right to search for, and were, in fact, still searching for, a large screen television set with a serial number matching that in the warrant *as well as* searching for records "which would document illegal transactions involving stolen property" when they came upon the guns.

■■■ The record does not support the government's contention that at the time the firearms were seized, the officers were still searching for the television set. Admittedly, there is some ambiguity in the evidence adduced at the suppression hearing. The district court, however, agreed with LeBron's view of the evidence and found that the three particularized items on the warrant were seized shortly after the officers entered LeBron's home.[3] We note

---

**2.** The Supreme Court has not directly dealt with the question of severing valid portions of search warrants from invalid. *Cf. Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The Eighth Circuit, however, recently has adopted a severance doctrine. *United States v. Fitzgerald,* 724 F.2d 633 (8th Cir.1983) (en banc). In *Fitzgerald,* we held that:

> [T]he infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant ..., but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized—on plain view grounds, for example—during their execution).

At 637. *Fitzgerald* also provides guidelines for application of the severance doctrine:

> First, magistrates must exercise vigilance to detect pretext and bad faith on the part of law enforcement officials. Second, courts should rigorously apply the exclusionary rule to evidence seized pursuant to the invalid portions of the warrant. Third, items not described in the sufficiently particular portions of the warrant will not be admissible unless it appears

that (a) the police found the item in a place where one would reasonably have expected them to look in the process of searching for the objects described in the sufficiently particular portions of the warrant, (b) the police found the item before they found all the objects described in the sufficiently particular portions of the warrant (that is, before their lawful authority to search expired), and (c) the other requirements of the plain view rule—inadvertent discovery and probable cause to associate the item with criminal activity—are met.

*Id.* at 637.

**3.** Ultimately, the television set initially found was positively identified as the one described in the warrant. Under the severance doctrine, once the items particularized in the warrant are seized, i.e., once the valid portion of the warrant has been executed, the plain view doctrine can no longer be a basis of admitting those items subsequently found. The plain view doctrine provides grounds for seizure only when the officers' access to the object has some prior justification under the Fourth Amendment.

that this determination was made without addressing the significance of the discrepancy in the serial numbers. However, even if it may be argued that the finding was in error, the record does not support the government's contention. At the time the guns were found, the officers were involved in a very thorough investigation of LeBron's bedroom, searching, *inter alia*, dresser drawers and under the mattress. *See infra* note 4. Officer Vince testified that the overhead closet where the firearms were found was small, and when asked whether there was any way the big screen television could have fit in the closet, he replied, "I—I imagine it's possible." Our review of the record makes clear that, in fact, when the guns were found, the officers were engaged in a general search for other items that they felt might have been stolen.

The government's final argument rests on the validity of the records clause of the warrant. The government urges that the officers found the guns in plain view while they were searching for records of stolen property. The difficulty that we have with the government's argument is that the records clause of the warrant suffers the same constitutional deficiency as the stolen property clause.

■ We recognize that, despite the dangers, a warrant may issue to search and seize records *if there is probable cause* to believe that records which are evidence or instrumentality of a crime will be there and the description is stated with sufficient particularity. *Andresen v. Maryland*, 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737, 2749 n. 11, 49 L.Ed.2d 627 (1976); *United States v. Dennis*, 625 F.2d 782, 792 (8th Cir.1980). The requisite specificity fluctuates with the particular circumstances. *See United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965); *United States v. Coppage*, 635 F.2d 683, 687 (8th Cir.1980) (*quoting United States v. Muckenthaler*, 584 F.2d 240, 245 (8th Cir.1978)). How-

ever, once again, the underlying measure of the sufficiency of the description is whether it provides adequate protection to the individual's personal rights. *Ventresca*, 380 U.S. at 108–09, 85 S.Ct. at 745–46. The court must carefully assess generic descriptions to assure that unwarranted intrusions upon privacy are not threatened. *See Andresen*, 427 U.S. at 482 n. 11, 96 S.Ct. at 2749 n. 11; *United States v. Fitzgerald*, 724 F.2d 633, at 637 (8th Cir.1983).

■ The government relies on several Eighth Circuit cases to support the validity of the records clause. *United States v. Dennis*, 625 F.2d 782, 792–93 (8th Cir.1980) (warrant authorizing search for "books and records (or items of evidence) relating to the extortionate credit transaction business" is a valid description); *United States v. Coppage*, 635 F.2d 683, 686–87 (8th Cir. 1980) ("books, records, chemical equipment, and personal papers relating to the manufacture and distribution of methamphetamine" is a valid description for a warrant); *United States v. Williams*, 633 F.2d 742, 745–46 & n. 5 (8th Cir.1980) ("records of banking, personal address books, records and notation of narcotics purchases and sales" is a valid description). In each of these cases, we held that the records to be seized were described with particularity sufficient to pass constitutional muster. However, in each case the records described are of a specific character. The reference in the warrant to the specific illegal activity that the records allegedly document gives a substantive limitation to the investigating officer's exercise of discretion when executing the warrant. Records of narcotic sales, manufacturing and distribution of drugs, and a credit transaction business all provide a particularized description and inherent guidelines, which are clearly absent here. Had the warrant limited the records to be seized to those documenting transactions regarding the items specifically described in the warrant, we would not be presented with the present difficulty.

The warrant in the instant case, without more, authorized a search for "any records which would document illegal transactions involving stolen property." There is no attempt to particularize the description of the property or of the records themselves. The only limiting factor is the reference to "stolen property." As earlier discussed, this generic classification is not sufficient to provide any guidance to an executing officer. Absent as well is any explanation of the method by which the officers were to distinguish such records from any documents relating to legal transactions. *Cf. United States v. Klein*, 565 F.2d 183, 187 (1st Cir.1977) (noting the prevalent common nature and lack of uniqueness among the items in warrants in which the generic descriptions were upheld). The record also reveals that there was nothing in the warrant or affidavit to substantiate the contention that there even would be such records in LeBron's home. In fact, the officers searched and seized general papers, documents, credit cards, and checks that bore no direct relation to stolen property. The records clause allowed, and resulted in, an indiscriminating rummage of the entire home.[4] We hold that the records clause did not provide adequate protection against an unwarranted intrusion into the defendant's personal rights. Consequently, it authorized an impermissibly broad search of Le-Bron's home. The discovery of the firearms was the product of the unconstitutional search of LeBron's residence. Their admission into evidence is error. *See United States v. Cardwell*, 680 F.2d 75 (9th Cir.1982); *United States v. Klein*, 565 F.2d 183 (1st Cir.1977) (Lay, J., sitting by designation).

The judgment of conviction is reversed and the case is remanded to the district court for further proceedings.

---

BAILEY BROWN, Senior Circuit Judge.

I respectfully dissent.

As the majority opinion demonstrates, Officer Tomsheck had probable cause to believe, as is set out in his affidavit, that LeBron was operating a large fencing operation at his home. It also appears from the affidavit that Tomsheck had probable cause to believe that, in operating such a large illegal business, LeBron would have records of the numerous transactions that would be involved. Thus the affidavit adequately supports the generic category: "any records which document illegal transactions involving stolen property."

The district court adopted the magistrate's determination that the involved guns were seized while in plain view during the course of the search for such records. This determination is adequately supported

---

**4.** On direct examination, Officer Vince's testimony reveals the full extent of the search; his testimony also aptly illustrates the dangers of such a general search:

> [Officer Vince]. We went through dresser drawers, the bed.
> [Counsel]. In the course of going through dresser drawers did you find anything?
> A. Yes, we looked at records that were in there of ownership and documents that we examined.
> Q. Precisely are you able to identify what kind of documents that you examined?
> A. Financial records. We examined checks. Receipts. We examined some credit cards.
> Q. Would you speak up a little bit?
> A. We examined in credit cards that were there.
> Q. Did the credit cards have a name on them?

> A. Yes, they did.
> Q. What was the name, sir?
> A. The defendant's name, Roderick Le-Bron—the defendant's name, Roderick Le-Bron. Excuse me.
> Q. Okay. And did you seize any of those documents?
> A. Yes, we did.
> Q. Did those documents have the—the name of the defendant on them, it that why you seized them?
> A. Yes, they showed ownership of that room where the person was staying at and so forth.
> Q. Did they, in your opinion, evidence transactions in stolen property?
> A. I don't believe we found anything to that effect there.
> Record at 70–71.

by the record in this case, and I do not understand the majority opinion to find fault with it. The majority opinion is based on the proposition that the generic description "any records which document illegal transactions involving stolen property" is not sufficiently specific to pass constitutional muster. It seems to me that the warrant and the lengthy and explicit affidavit, fairly construed, make it reasonably clear that the records referred to were records of purchases and sales that one would expect to be kept in operating such a business. Certainly, this generic description would *exclude* any records that had nothing to do with the purchase and sale of firearms, motor homes, televisions, video tape recorders, lawn mowers and sheet steel in which, according to the affidavit, LeBron was dealing. I can see no difference between the generic description involved here, if reasonably construed in the light of the facts set out in the affidavit, and the generic description involved in *United States v. Dennis*, 625 F.2d 782 (8th Cir.1980). There, as pointed out in the majority opinion here, this court approved, in a loan shark case against an individual preying on his fellow employees, a generic description "certain books and records (or items of evidence) relating to the extortionate credit transaction business." If records relating to the "extortionate credit transaction business" is sufficiently specific, records that document "illegal transactions involving stolen property" should be sufficiently specific. After all, what we are dealing with in these cases is a reasonable assumption that the actors must have kept some records of a business carried on at this scale, and the officer should not be required to know, and to insert in the warrant, precisely what records would be kept.

The majority opinion is, in my view, an apt example of an approach that Justice Goldberg precisely warned against in *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). There the Court said:

> These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*Id.* at 108, 85 S.Ct. at 746.

Certainly, if we put aside a "grudging and negative attitude" (*Ventresca* at 108, 85 S.Ct. at 746), we should conclude that the generic description involved here is at least as definite as that approved by this court in *Dennis*.

I would affirm the district court.