NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0528n.06
Filed: June 21, 2005

No. 04-1757

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

WILLIE LEE ROBINSON,

     Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before:     MARTIN and ROGERS, Circuit Judges; McKINLEY, District Judge.[*]

JOSEPH H. McKINLEY, JR., District Judge. Willie Lee Robinson appeals his conviction

of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). Robinson claims that the

district court erred in denying his motion to suppress evidence alleging the warrant was issued

without probable cause, was based on stale information, and was overbroad. For the following

reasons, we **AFFIRM** the judgment of the district court.

I.

In late December 2000, the Drug Enforcement Administration (DEA) and the Detroit Police

Department (DPD) began investigating Willie Lee Robinson for money laundering, bank fraud,

kidnaping, and murder. The investigation ultimately yielded a warrant that was issued on October

---

[*]The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western
District of Kentucky, sitting by designation.

17, 2001.

According to the supporting affidavit of Special Agent Edward Donovan, police officials began investigating Robinson following the December 26, 2000 kidnaping and murder of Anthony Gates, a Detroit-area drug trafficker. On the morning of the murder, Gates apparently called his home at approximately 4:00 A.M. and told his girlfriend that he was "sending some guys over to get the money out of the safe." Shortly thereafter, someone used Robinson's cellular telephone to call Gates's home. A member of Gates's family immediately called back. A male answered the call but denied calling Gates's home. Gates was later found dead from multiple gunshot wounds and without his wallet.

Before his murder, Gates had opened an account at Credit Union One in April of 2000 under the alias of Michael Smith. He placed $50,000 in the account in October of 2000. On July 15, 2001, approximately seven months after Gates's murder, Robinson's neighbor, Bruce Toney, used Gates's social security number to change the access code to Gates's bank account. On July 23, Robinson and Toney opened a joint bank account at Gates's former bank, and Robinson transferred over $47,000 out of Gates's account into the newly opened joint account. A bank employee, however, called Robinson about the suspicious money transfer. Robinson told the bank official that Gates was buying into his business, Dominique De Cartier Lingerie Shop. However, in over six months of surveillance of Dominique's, the DEA/DPD never observed legitimate business activity being conducted on the premises. Robinson then used his home telephone line to fax a letter from Gates's alias attempting to legitimize the bank transfer. Robinson also faxed Gates's alias's social security card to the bank. Robinson's home telephone number and the name of his business were listed at

the top of the fax. Robinson and Toney allegedly engaged in a number of financial transactions to try to cover up the scheme.

Based primarily on the information outlined above, the magistrate authorized a search warrant. The search warrant was limited to the following:

1.) Telephone books, ledgers, day planners, calendars, records from financial institutions and/or loan companies; bank statements, receipts, books and records, notes, money orders and receipts;

2.) Records and documents pertaining to the structuring of money through any business entities;

3.) Fraudulent and legitimate identification documents, including social security cards, driver's licenses and passports;

4.) The wallet and personal effects of Anthony Gates, aka "Michael Smith," including but not limited to his Social Security Card; [and]

5.) Fax machines and any other electronic equipment utilized to transfer funds or to direct the transfer of funds.

During the search, the officials apparently recovered numerous documents relating to financial crimes, as well as five firearms. Robinson was later tried and convicted in state court for the murder, kidnaping, and extortion of Gates. In the court below, Robinson was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Robinson filed a motion to suppress evidence seized pursuant to the warrant, claiming, among other things, that it was not supported by probable cause, that it was overbroad, and that it was based on stale information. After a hearing was held, the district court judge denied Robinson's motion to suppress from the bench. Following a jury trial, Robinson was convicted and was sentenced to seventy-eight months of imprisonment. Robinson appeals the denial of his motion to suppress.

II.

This Court reviews a district court's denial of a motion to suppress evidence under a two-fold

standard of review. "[W]e uphold the district court's factual determinations unless clearly erroneous, but we review the district court's legal conclusions, such as the existence or absence of probable cause, de novo." *United States v. Couch*, 367 F.3d 557, 560 (6th Cir. 2004) (emphasis omitted). We view the evidence in the light most favorable to the United States when reviewing a denial of a motion to suppress. *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000).

The only issue presented in this appeal is the validity of the search warrant that was issued for the search of Robinson's residence on October 17, 2001. Robinson claims that Special Agent Donovan's affidavit in support of the warrant did not establish probable cause, that the warrant was overbroad, and that the information contained in it was stale. For the following reasons, we hold that all of Robinson's arguments fail.

First, when reviewing an affidavit in support of a search warrant, we consider the "totality of the circumstances" in asking the "commonsense, practical question [of ]whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). In doing so, we accord great deference to a magistrate's determination of probable cause. *See United States v. Allen*, 211 F.3d 970, 972-73 (6th Cir. 2000) (en banc).

In our view, the affidavit of Agent Donovan establishes probable cause for the issuance of the search warrant in this case. The affidavit sets forth significant details regarding a series of events supporting the search of Robinson's residence for evidence of financial crimes and the kidnaping and murder of Anthony Gates. Gates's wallet and social security card, and the social security card of Gates's alias, Michael Smith, were not found after his murder. Several months later, Robinson's neighbor, Bruce Toney, used Gates's social security number to change the access code to Gates's

bank account. Robinson then used his wife's telephone to transfer over $47,000 out of Gates's account into his and Toney's joint account. After the bank questioned the transfer, Robinson used his home telephone line to fax documents, attempting to authorize the transaction. Agent Donovan predicted that a search of Robinson's home would produce evidence of Robinson's involvement in the crimes detailed above. These facts demonstrate that the affidavit was sufficient to establish probable cause to search Robinson's residence.

Second, the search warrant is not overbroad. The Defendant argues that the warrant amounted to a general warrant, and thus inappropriately vested executing officers with the ability to determine the scope of the search warrant. The degree of specificity required in search warrants, however, "is flexible and will vary depending on the crime involved and the types of items sought." *Untied States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988). "Thus a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Id*. (quoting *United States v. Blum*, 753 F.2d 999, 1001 (11th Cir. 1985)). In *Henson*, the Court found that where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice. *Id*. Thus, the use of generic terms does not necessarily render a search warrant overbroad where it could not be known with more specificity which items would provide information relating to the crimes at issue. *See Id*.

The warrant in this case was as specific as possible under the circumstances and thus not overly general. Robinson cites the case of *United States v. LeBron*, 729 F.2d 533 (8th Cir. 1984) to support his argument. In that case, the warrant authorized the officers to search for "other property, description unknown, for which there exists probable cause to believe it to be stolen." *Id*.

at 536. The warrant in the instant case, however, set forth specific classes of items, thus limiting the officers' discretion. Therefore, we reject Robinson's overbreadth claim.

In the context of his overbreadth argument, Robinson also contends that the officers exceeded the scope of the warrant by seizing firearms located in a safe. In *United States v. Ross*, 456 U.S. 798, 820-21 (1982), the Supreme Court stated that a "lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found." Thus, armed with the search warrant, the officers were allowed to open the safe. Once inside the safe, the officers viewed firearms. As the incriminating nature of the firearm was obvious due to Robinson's status as a convicted felon, the officers could seize the firearms. *See United States v. Bishop*, 338 F.3d 623, 626 (6th Cir. 2003).

Finally, the search warrant was not based on stale information. "The function of the staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *Henson*, 848 F.2d at 1382. Rather, the issue of staleness depends on the "inherent nature of the crime." *Id*. Information in a search warrant is generally not stale if it can reasonably be believed that the defendant's criminal activity is on-going. *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001). In determining whether a probable cause finding is stale, we consider the following: "the defendant's course of conduct; the nature and duration of the crime; the nature of the relevant evidence; and any corroboration of the older and

more recent information." *United States v. Czuprynski*, 46 F.3d 560, 567 (6th Cir. 1995) (en banc).

Based on our consideration of these factors, we conclude that the information contained in the affidavit was not stale when the warrant was issued. While it is true that the alleged financial transactions occurred in July 2001, more than three months before the issuance of the search warrant in October 2001, Robinson's criminal activity could reasonably be believed to be ongoing at that time. Furthermore, the nature of the evidence in this case—primarily financial documents and records—also supports the district court's decision. It seems reasonable to believe that Robinson would still have such documents at his residence. Thus, in light of the totality of the circumstances in this case, we conclude that the district court did not err in finding that the search warrant was not based on stale information.

III.

For the foregoing reasons, we **AFFIRM** the decision of the district court.