**Irene Ruth BERNARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–89–491–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 14, 1991.

Bob Wicoff, Houston, for appellant.

Linda A. West, Houston, for appellee.

Before ROBERTSON and DRAUGHN, JJ., and JACKSON B. SMITH, Jr., J. (Retired, Sitting by Assignment).

## OPINION

ROBERTSON, Justice.

After the trial court overruled a motion to suppress evidence obtained in a search pursuant to a search warrant, appellant entered a plea of not guilty before the court to possession of LSD. The trial judge found appellant guilty, after she had stipulated what the state's evidence would be if the state's witnesses were called to testify, and assessed punishment at confinement for five years. The sole issue before us is the validity of the affidavit for the search warrant. We affirm.

The search was conducted under authority of a search warrant issued by a federal magistrate. Following its execution, the warrant, along with all other papers, was ordered sealed. The record does not disclose the efforts to secure a copy of the warrant and the state asserts that appel-

lant has therefore waived any error. However, because appellant is contending that the affidavit failed to state probable cause, she asserts, and we believe, she has preserved the question of the validity of the affidavit for the search warrant. We will address the issue.

The affidavit for the search warrant is some twenty pages in length and chronicles, in great detail, the drug dealing activities over a period of some 15 years of appellant's husband and one Sam Stewart. Several references in the affidavit concern appellant's activities associated with such drug dealing. The affidavit was signed by Internal Revenue Service Special Agent Gallman and the basis for the desired search, as contained in the opening paragraphs of the affidavit, was:

A. Your affiant alleges that probable cause exists to believe that concealed within an apartment residence designated as Number 116–C, being described as a multi-unit apartment complex, at 2400 Westheimer, Houston, Harris County, Texas, are the following items:

1. books, records, sales and/or purchase invoices, receipts, notes, ledgers, bank records, money orders and/or other papers relating to the transportation, ordering sale, manufacture and distribution of illegal controlled substance and/or records relating to the receipt and/or disposition of the proceeds from the distribution of illegal controlled substance.

2. currency, financial instruments, precious metals, jewelry, and/or other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, laundering, secreting or spending large sums of money made from engaging in illegal controlled substance activities.

3. telephone and address books or papers which reflect names, addresses and/or telephone numbers of individuals associated in dealing in illegal controlled substance.

4. photographs of individuals, property and illegal controlled substance.

5. materials used in the packaging, cutting, weighing and distributing illegal controlled substance; 3,4—methylenedioxy methamphetamine, also known as MDMA, MDM, ecstasy, eve and cocaine, and marijuana.

The items listed in paragraphs A above constitute evidence of DANIEL GLASS BERNARD and IRENE RUTH BERNARD'S ongoing and continuing involvement in the distribution of illegal controlled substance and the resulting financial crimes in violation of various sections of Title 21, United States Code (U.S.C.), including sections 841(a)(1), 846 and 848 and Title 26, U.S.C. Sections 7201 and 7203.

It is clear to us that the search warrant was sought for the purpose of recovering the records and other evidence detailed above which constituted evidence of the manufacture or distribution of controlled substances (21 U.S.C.A. Sec. 841(a)(1)), conspiracy to engage in the acts prohibited by Sec. 841(a)(1) (21 U.S.C.A. Sec. 846), engaging in a continuing criminal enterprise in the acts prohibited by Sec. 841(a)(1) (21 U.S.C.A. Sec. 848), attempt to evade taxes (26 U.S.C.A. Sec. 7201) or willful failure to pay taxes (26 U.S.C.A. Sec. 7203).

In a broad-sided attack, appellant contends: (1) the facts in the affidavit were "stale" because "none of the activities described lend themselves to any reference that on December 19, 1988, there was probable cause to think that drugs or the related items mentioned in the affidavit would be found in appellant's apartment;" (2) "the information in the affidavit failed to establish an adequate connection between the residence which was searched and the drug smuggling activities of Sam Stewart and any other crime;" (3) "the affidavit fails to particularize the description of the property or the records that were being sought;" (4) the affidavit was made in bad faith because Agent Gallman failed "to inform the magistrate that Dan Bernard (appellant's husband) had been in jail for two months at the time of the affidavit;" and

(5) the affidavit, as to appellant, is deficient because "there is not a single fact which reasonably suggests that appellant would be likely to possess any of the documentation or records alluded to."

■ In analyzing the affidavit before us we must keep in mind two issues. First, both the United States Supreme Court and the Texas Court of Criminal Appeals have mandated that we are not to interpret the affidavit for a search warrant "in a hypertechnical" sense but rather we are to look at it in a "commonsense manner." *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) and *Bower v. State*, 769 S.W.2d 887 (Tex.Crim.App.1989), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611. Second, the search warrant was sought for the purpose of searching a residence. Appellant's attack upon the affidavit for failure to state any facts which would reasonably suggest appellant would be in possession of the documentation has been seized upon by the dissent and it appears to us totally immaterial to the issue of the validity of the affidavit because it was not even necessary that appellant be named in the warrant. Rule 41(b) FED.R.CRIM.PROC. authorizes the issuance of a search warrant to search for and seize property that constitutes evidence of the commission of a criminal offense or which has been used as a means of committing a criminal offense and if the search warrant is for that purpose it is not necessary that the person in charge of the premises be named. *Wangrow v. United States*, 399 F.2d 106 (8th Cir.1968), *cert. denied*, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270. It is only where the warrant is issued to search for and seize *a person* for whose arrest probable cause is stated, that Rule 41(b) requires that the person be named. While the warrant is not in the record and appellant has not preserved any complaint concerning it, it appears obvious that the warrant did not command her arrest because the evidence shows that appellant was not arrested at the time of the search, was not placed under arrest until some 4 months later and, then, only after a chemical analysis had been conducted on the illegal drugs found in her purse.

With these principles in mind we will examine the affidavit to weigh appellant's complaints. First, appellant states the facts in the affidavit were stale. Agent Gallman detailed in the affidavit that he had been a special agent in the Criminal Investigation Division of the Internal Revenue Service for some six years; that he had been involved in numerous investigations of individuals who derive substantial income from illegal importation, manufacture, distribution and sale of illegal controlled substances, and that he had extensive experience in investigating financial crimes committed by people who traffic in illegal controlled substances. He stated that the grounds for the issuance of the sought-after search warrant were derived from surveillances, physical evidence, review of reports, discussions with investigators of the Austin Police Department, Department of Public Safety, Drug Enforcement Administration and others individually detailed in the affidavit. He swore that based upon his experience and training he *knew* that those individuals who deal in illegal controlled substances:

1. maintain books, records, money orders and other papers relating to the manufacture, transportation, ordering, sale and distribution of such drugs. Further, since many of the drugs are furnished on consignment, records of monies owed are normally kept. There records are normally kept where the individuals have ready access to them and they are kept over long periods of time;

2. routinely conceal in their residences caches of such drugs, large amounts of currency, financial instruments, precious metals, jewelry and other items of value derived from such drug transactions;

3. in attempts to legitimize profits from their illegal operations, utilize false and fictitious business records, foreign and domestic banks, securities, cashiers checks, money orders, letters of credit, brokerage houses, real estate shell corporations and business fronts;

4. maintain addresses and telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of associates in their illegal organization;

5. take, or cause to be taken, and keep photographs of themselves, their associates and their illegal product; and

6. keep paraphernalia including scales, plastic bags and cutting agents, for purchasing, cutting, weighing and distributing such drugs.

Gallman swore that the statements of fact contained in the affidavit supporting probable cause for the issuance of the warrant for the search of the residence were made to him by Department of Public Safety Investigator Stone. Such statements as related by Stone were recited in detail and included:

1. Stone had been investigating the illegal conduct of Sam Stewart and his associate Daniel Glass Bernard (appellant's husband) since April 1988 (some 9 months prior to the executing the affidavit for search warrant);

2. A first-time confidential informant, whose credibility Stone had corroborated through other informants and independent investigation, told Stone:

   a. he had observed, in the fall of 1987, Stewart and Bernard sell large quantities of a designer drug known as ecstasy, and/or eve. He stated he had been present in Stewart's residence when Stewart had sold these substances to his (Stewart's) dealers. He further stated Stewart told him that Bernard was his business partner;

   b. he had observed Stewart in possession of thousands of dollars in cash money which he had derived from the sale of ecstasy and eve;

   c. that Stewart and Bernard lost some 250,000 tablets of ecstasy and eve as a result of a seizure during a border crossing in the McAllen, Texas, area in February or March 1988;

   d. he had personally observed Stewart using cocaine at his (Stewart's) residence in the 8100 block of North Mo-

pac Expressway, North Castle Apartments, # 227, Austin, Texas.

3. Investigator John Jones of the Austin Organized Crime Unit had told Stone that:

a. as a result of his investigation of the distribution of drugs by Stewart, he determined that Daniel Glass Bernard was an associate and assisted Stewart in the distribution of the drugs ecstasy and eve;

b. a confidential informant, whose reliability had been proven through previous seizures based upon his information, stated Stewart, in association with other individuals, were large traffickers in ecstasy and eve;

c. another confidential informant, whose reliability was established through other informants and independent investigation, stated that during 1986 he had personally observed Stewart, and other individuals associated with him, selling ecstasy and eve;

d. a third confidential informant whose reliability was likewise established, stated he had personally observed Stewart and his associates trafficking in ecstasy and eve in thousand-lot quantities and that Stewart often used local motel rooms to facilitate the transfers. Investigator Jones stated he had confirmed Stewart's rental of local motel rooms.

4. One of his confidential informants, whose reliability he had established through other informants and independent investigation, told Stone:

a. he had personally observed Stewart and Daniel Glass Bernard during the fall of 1987, deal in thousand-lot quantities of ecstasy and eve;

b. he had sold cocaine to both Stewart, who was an avid user of cocaine, and Bernard on several occasions during 1987;

c. he had purchased ecstasy from Stewart and Bernard during 1987, usually in quantities of 700 tablets for $4.00 each;

d. that one of Stewart's and Bernard's drug dealers told the confidential informant that during February or March 1988, one of Stewart's and Bernard's loads of 260,000 tablets of ecstasy had been seized on the Mexican border;

e. that Stewart is married to a Katia Wah who uses the name of Marylin Stewart and they had purchased a Mercedes Benz 190E automobile.

5. Stone checked the records of the named automobile company and found that Sam and Marylin Stewart, had purchased a Mercedes 190E on January 6, 1988, and that the balance owed after allowance for 2 trade-in automobiles was $5,700, which amount was paid by Marylin Stewart in $20 bills.

6. Stone has reviewed records of the Drug Enforcement Administration which show:

a. on February 21, 1988, U.S. Customs seized approximately 265,000 tablets of ecstasy and eve and arrested the courier;

b. a post-arrest investigation resulted in the discovery of documentation and phone toll records indicating numerous contacts between the courier, Bernard and Stewart immediately prior to the seizure.

7. Stone had analyzed long distance toll records of telephones in Stewart's and Bernard's homes and numerous telephone calls were made between October, 1987 and September 1988.

8. Stone received information from U.S. Customs that on October 28, 1988, while Stewart was clearing customs at Dallas–Ft. Worth airport upon entering the United States from France, he was found in possession of 11 tablets of an opiate derivative and $6,982 in U.S. currency.

9. Stone talked to DPS Narcotics Investigator Jones, who stated that on December 7, 1988, while maintaining surveillance of Stewart, he observed him leave the home of his father-in-law on Margalene Way carrying a bag which Stewart subsequently delivered to Giorgio Piaget. Shortly thereafter Piaget was stopped by DPS Trooper

Aleman and upon recovery of the bag, it was found to contain approximately 25 pounds of ecstasy and/or eve;

10. Stewart moved from his residence on Baldridge Drive in Austin in September 1988, to apartment 13109, The Village at Walnut Creek Apartments;

11. Agent Gallman stated that on December 7, 1988, a federal search warrant was executed on apartment 13109 and the residence of Stewart's father-in-law on Margalene Way. During the search the Mercedes automobile and a pick-up truck were seized for forfeiture; $45,500 in currency was seized from Stewart's house, and $146,000 in currency was seized from a briefcase in the home of Stewart's father-in-law. Edwardo Wah, Stewart's father-in-law, stated the brief case belonged to Marylin Stewart;

12. In addition to the money recovered, many documents were also seized, some bearing the name of Daniel Glass Bernard. Gallman stated that based upon his experience and training, these records reflected sales of ecstasy and eve;

13. As a result of reviewing Drug Enforcement Administration records, Investigator Stone found that:

a. following an arrest of appellant (Ruth Irene Bernard) in May, 1986, some $151,504 in U.S. currency was seized from her automobile, along with a small amount of marijuana and suspected cocaine. In response to a forfeiture action, Daniel Glass Bernard filed an affidavit stating the source of the currency was from the sale of designer drugs;

b. Daniel Glass Bernard is the subject of at least four Drug Enforcement files;

c. When Daniel Glass Bernard was arrested in May 1973, he was in possession of marijuana and $10,174 in U.S. currency;

d. in April 1984, Daniel Glass Bernard and Robert Zeissel, a documented narcotics smuggler, were in a plane crash in which Zeissel was killed.

14. Stone has reviewed the records of the Carrollton Police Department in reference to Daniel Glass Bernard and found:

a. During August 1986, he was arrested in possession of some 16 grams of cocaine and $47,051.53 in U.S. currency, along with an additional amount of marijuana and cocaine found in the 1985 BMW automobile;

b. the forfeiture records on the BMW automobile contains an affidavit from the automobile salesman who swore that Daniel Glass Bernard had paid him $33,000 in U.S. currency for the car.

15. Stone has reviewed the records of the Houston Police Department and found that Daniel Glass Bernard was arrested in February, 1987, for possession of cocaine and found in possession of $25,260.77 in U.S. currency.

16. On December 14, 1988, DPS Sergeant Pagel checked the records of Houston Lighting and Power Company and Southwestern Bell Telephone Company and determined that the residence sought to be searched was the residence of Daniel Glass Bernard. Additionally Stone checked the DPS driver's records and they also revealed Bernard's address to be the residence sought to be searched.

Agent Gallman then swore that based upon all of the above information he believed that Sam Stewart, Daniel Glass Bernard and Irene Bernard have been involved in a continuing enterprise involving the distribution of ecstasy and eve and that a search of the residence would reveal substantial evidence of their illegal conduct.

We do not agree that the facts stated in the affidavit are stale. When the affidavit is considered in its entirety, it merely details, for a period of some years, the past history of the participants, their dealings in drugs, the recovery of large sums of cash money on several occasions and the recovery—only 12 days previously—of various records from Stewart's residence revealing drug dealing.

The timeliness of information upon which an affidavit is based is dependent upon the type of criminal activity involved. *United States v. Johnson*, 461 F.2d 285 (10th Cir.1972). There, some three weeks had passed after the last factual incident recited in the affidavit and the execution of the affidavit for the search warrant. In rejecting a staleness claim, the court stated:

> Initially, it should be noted that the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts relied upon and the issuance of the affidavit. Together with the element of time we must consider the nature of the unlawful activity. Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.

461 F.2d at 287. Neither does the court of criminal appeals set an arbitrary time the passage of which destroys the basis for a reasonable belief as to the continuance of the situation set forth in the affidavit. *See Bower v. State*, 769 S.W.2d 887 (Tex.Crim. App.1989), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611. In the case before us, the affidavit was executed only 12 days following the successful execution of the search warrant on Stewart's living quarters in Austin, Texas and only 5 days following the agent's verification of the address of appellant and her husband in Houston. We hold that the passage of this time did not destroy the probable cause stated in the affidavit.

We also reject appellant's contention that "the information in the affidavit failed to establish an adequate connection between the residence which was searched and the drug smuggling activities of Sam Stewart and any other crime." Looking at the totality of the circumstances as stated in the affidavit, Agent Gallman swore that persons engaged in the illegal drug business keep many books, records and other detailed evidence, normally where they have ready access to them which records provide evidence of their involvement. The facts and circumstances as stated in the affidavit provide sufficient probable cause to believe both Stewart and Bernard were involved in the illegal drug business. The affidavit shows that only 12 days previously a federal search warrant was executed on the home of Stewart, Bernard's asserted partner, and evidence of illegal distribution of drugs and other resulting crimes was discovered. We hold this was adequate probable cause to support Gallman's belief that a search of Bernard's residence would likewise reveal "substantial evidence of David Glass Bernard and Irene Bernard's illegal conduct." Our holding on this assertion likewise disposes of appellant's fifth contention that "there is not a single fact which reasonably suggests that appellant would be likely to possess any of the documentation or records alluded to."

Relying upon *United States v. Le Bron*, 729 F.2d 533 (8th Cir.1984), appellant contends the affidavit was deficient because it failed "to state with sufficient particularity the items to be seized." There the court held a warrant authorizing a search of a residence for "any records which would document illegal transactions involving stolen property" was impermissibly broad. However, it is interesting to note that the court, in reaching its conclusion, reviewed and distinguished several of its prior decisions, all of which are more analogous to the description of the records as described in the affidavit before us: *United States v. Dennis*, 625 F.2d 782, 792–93 (8th Cir.1980) (warrant authorizing search for "books and records (or items of evidence) relating to the extortionate credit transaction business"); *United States v. Coppage*, 635 F.2d 683, 686–87 (8th Cir. 1980) ("books, records, chemical equipment, and personal papers relating to the manufacture and distribution of methamphetamine"); *United States v. Williams*, 633 F.2d 742, 745–46 & n. 5 (8th Cir.1980) ("records of banking, personal address books, records and notation of narcotics

purchases and sales"). In *Le Bron*, the court stated:

In each of these cases, we held that the records to be seized were described with particularity sufficient to pass constitutional muster. However, in each case the records described are of a specific character. The reference in the warrant to the specific illegal activity that the records allegedly document gives a substantive limitation to the investigating officer's exercise of discretion when executing the warrant. Records of narcotic sales, manufacturing and distribution of drugs, and a credit transaction business all provide a particularized description and inherent guidelines, which are clearly absent here. Had the warrant limited the records to be seized to those documenting transactions regarding the items specifically described in the warrant, we would not be presented with the present difficulty.

We have quoted at the beginning of this opinion the detailed items listed by Agent Gallman which he states probable cause exists to believe are concealed in appellant's residence. These include financial records *relating to* the illegal drug business, currency, other valuables and evidence of financial transactions *relating to* the illegal drug business, address books, papers and telephone numbers *of individuals* associated in the illegal drug business, photographs associated with and *relating* to the illegal drug business and materials used in the packaging, cutting, weighing and distribution of illegal controlled substances. We hold this was a sufficient description of the evidence sought to be seized.

■ Next, appellant contends the affidavit was made in bad faith because Agent Gallman failed to inform the magistrate that Dan Bernard had been in jail for two months at the time the affidavit was made, thus rendering the search constitutionally invalid. We disagree.

While a panel of this court held in *Melton v. State*, 750 S.W.2d 281 (Tex.App.— Houston [14th Dist.] 1988, no pet.) that claimed material omissions in an affidavit

for a search warrant "are treated essentially the same as claims of material misstatements", such holding appears to be at variance with *Brooks v. State*, 642 S.W.2d 791, 796 (Tex.Crim.App.1982), where the court of criminal appeals stated:

Appellant's reliance upon *Franks*, supra, in this ground of error is misplaced. That case relates not to *omissions* of facts about an informant but, only to *false statements* by the affiant which are made knowingly and intentionally or made in *reckless* disregard of the truth. Absent such a showing as would warrant a *Franks* hearing, this Court will not look beyond the four corners of the affidavit.

We should follow this statement by the court of criminal appeals and hold that the omission of a statement in the affidavit that appellant's husband had not been at the residence for approximately 60 days was totally immaterial. However, since a panel of this court has previously spoken on the issue and since the fifth circuit has recognized that allegations of material omissions are to be treated "essentially similarly" to claims of misstatements, *United States v. Park*, 531 F.2d 754 (5th Cir.1976), we will address appellant's contention.

While appellant filed a motion to suppress, she made no attack therein concerning the alleged material omission of the statement that her husband was in custody and not present at the apartment at the time of the search. This was fatal to her challenge to the search on this basis because in the absence of the *preliminary* showing mandated by *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), one is not entitled to subfacially challenge the affidavit. The trial court therefore erred in permitting the parties to go behind the allegations contained within the four corners of the affidavit.

■ However, since the trial court permitted the hearing we will further address the issue. Where a subfacial challenge is made, our duty is to examine the record of the suppression hearing to determine whether appellant proved by a preponder-

ance of the evidence, first, that the omission was in fact made, and, second, that it was made intentionally or with a reckless disregard for the accuracy of the affidavit. *United States v. Martin,* 615 F.2d 318, 328 (5th Cir.1980). If appellant carried this burden, we must finally determine whether, if the omitted material had been included in the affidavit, the affidavit would still establish probable cause for the search. *Martin, id.* Only if it would *not* is the court required to suppress the evidence seized under the warrant. *Martin, id.*

In *Martin,* 615 F.2d at 329, the court stated:

> Under *Franks,* a proven misstatement can vitiate an affidavit only if it is established that the misstatement was the product "of deliberate falsehood or of reckless disregard for the truth.... Allegations of negligence or innocent mistake are insufficient." 98 S.Ct. at 2685. By analogy, it must be proven that the omissions were made intentionally or with a reckless disregard for the accuracy of the affidavit; negligent omissions will not undermine the affidavit. *See United States v. House, supra,* 604 F.2d [1135] at 1141 [8th Cir.1979].

█ At the hearing on the motion to suppress, appellant only had Agent Gallman affirm that the affidavit did not mention "Daniel Bernard having been in custody for a month and a half or two months." When the agent then attempted to answer about "the relevant part of the affidavit," appellant stated "That's for the judge to decide." *There is absolutely no evidence* in the record illuminating the state of mind of Agent Gallman as to why he omitted from the affidavit the fact that appellant's husband was in custody. Appellant did not even prove the omission was a negligent act, but even if we assumed the evidence is sufficient to show negligence, she bore the burden of showing by a preponderance of the evidence that the omission was *more* than that. *Martin, id.*

Therefore, we find that the omission was not fatal for three reasons: first, appellant did not meet her burden; second, even if the omission had been included in the affi-

davit, the affidavit would still establish probable cause for the search of the residence and, finally, the omission of the fact that appellant's husband was in custody and therefore was not at the residence at the time is totally immaterial and of no moment because the search was for the residence—not appellant or her husband.

We find no basis under the law for voiding this search. The judgment of conviction is affirmed.

DRAUGHN, Justice, dissenting.

I respectfully dissent from the majority opinion.

The affidavit in this case is a classic example of the old adage about "not seeing the forest for the trees." The government agent in this case has listed in his affidavit, like trees, a voluminous number of internally detailed items under a general label. If these numerous items are evaluated without specifically relating them to appellant and the residence in question, one might be tempted to conclude that with such a large number of items, there must be something among them that constitutionally justified a search of this private residence where appellant lived. Indeed, the cumulative effect of the list is overwhelming. It contains a virtual laundry list of all possible records that might be kept by a reasonably prudent (or imprudent) drug dealer. It also contains a voluminous amount of hearsay information about suspected drug dealing in the past by *other* people in *other* locations.

I assert that there is no probative evidence anywhere in the sixty-eight paragraphs spread out over the twenty pages of this affidavit to justify the conclusion that appellant was engaged in an "ongoing and continuing involvement in the distribution of illegal controlled substances." Yet, Agent Gallman, no less than five times in the affidavit, states that she was. Agent Gallman's personal conclusion, no matter how many times repeated, does not make it so. There is simply no viable evidence to support such a conclusion. The only possible evidence directed at her consists of a statement in paragraph 15(a) that in May

of 1986 Ruth Bernard was arrested for D.W.I. and that an inventory of the vehicle she was driving revealed a large amount of cash, a small amount of marijuana, and *suspected* cocaine. Daniel Bernard testified at a forfeiture hearing that the cash was from the sale of designer drugs. Even by the most liberal of standards, this isolated instance involving appellant in 1986 cannot justify the conclusion that she was engaged in "an ongoing and continuing involvement in the distribution of illegal controlled substances." And to suggest that this 1986 incident is justification for a search of her residence and purse in 1988 defies logic. It follows that such an unsupported conclusion cannot constitutionally justify or support an approved search of her residence.

Regarding appellant, the affidavit specifically alleges only the following statements of fact:

(1) In May 1986, she was arrested for driving under the influence of alcohol. A small amount of marijuana was seized from the vehicle she was driving, along with what was suspected to be cocaine. Also seized was a total of $151,504.00, which Mr. Bernard asserted under oath was derived from the sale of designer drugs.

(2) On December 14, 1988, Houston Lighting & Power information revealed that Mr. Bernard and appellant "had utilities" at the apartment which was raided.

Agent Gallman also made the following conclusion in the affidavit: "Based on all the foregoing facts, the affiant believes that there exists probable cause to believe that [both appellant and her husband] are concealing quantities of illegal controlled substances" in addition to records "and other documents relating to the receipt and disposition of funds derived from or related to the ongoing and continuing illegal criminal activity, in the residence...." However, at the hearing on the motion to suppress, Agent Gallman testified: "We did not contend there were illegal narcotics in the apartment."

Although appellant was prosecuted in state court, if the federal search was lawfully conducted, a state court need not exclude evidence properly seized under federal law. Of course, the search, conducted by IRS agents under a federal warrant, still must meet constitutional provisions against unreasonable search and seizure. *King v. State*, 746 S.W.2d 515, 519 (Tex. App.—Dallas 1988, pet. ref'd). Appellant argues that whether the warrant authorized a search for illegal drugs or, as the State contends, merely financial information, the warrant was insufficient to show probable cause to justify a search of appellant's apartment.

We must examine the "totality of the circumstances" to determine whether an affidavit for a search warrant states probable cause to believe that contraband or evidence is located in a particular place. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Further, because of the strong preference for warrants, in a doubtful or marginal case a search under a warrant may be sustained where, without it, one might fall. *United States v. Ventresca*, 380 U.S. 102, 106–07, 85 S.Ct. 741, 744–45, 13 L.Ed.2d 684 (1965); *Bower v. State*, 769 S.W.2d 887, 902 (Tex. Crim.App.1989), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989).

In my opinion, the affidavit failed to establish an adequate connection between the residence that was searched and any criminal activity. The affidavit implies a connection between the residence and the alleged drug smuggling activities of Sam Stewart, who had been arrested twelve days earlier some one-hundred-fifty miles away. Also, the affidavit mentions no particular documents or other items to be seized. Absent a degree of specificity, there is a danger of a search turning into a "fishing expedition." However, the warrant did allege specific illegal activity which the records allegedly would document. *United States v. LeBron*, 729 F.2d 533, 538 (8th Cir.1984). Finally, appellant contends that none of the activities described in the affidavit suggest there was probable cause that drugs or other items mentioned would be found in her apartment *on December 19, 1988.*

Speaking to the question of "stale" facts presented in an affidavit in support of a search warrant, the United States Supreme Court has stated that such facts must be "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time...." *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932). However, where the affidavit recites facts indicating illegal activity of an ongoing and continuing nature or a course of conduct, the passage of time becomes less significant. *Bastida v. Henderson*, 487 F.2d 860, 864 (5th Cir.1973); *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir.1972). Here, the affidavit alleged suspected illegal activity spanning several years, involving Sam Stewart and Daniel Bernard. From this hearsay on hearsay suspicion, Agent Gallman reasons in circular fashion that since he knows that individuals engaged in such suspected drug trafficking keep and maintain their records "over long and extended periods of time," there must be such records in appellant's residence.

The majority seeks to refute the "staleness" attack on the information contained in this affidavit by seizing on to the conclusion that only twelve days before the search various drug records and cash were seized from Sam Stewart's residence in Austin revealing drug dealing. The affidavit also reflects that some "unspecified" documents seized at Stewart's Austin residence bore the name of Daniel Glass Bernard, and that Agent Gallman, based on his experience and training, concluded "these records reflected sales of ecstasy and eve." He never specifically identified the alleged documents with Bernard's name on them nor did he say how they specifically tied Bernard to illegal activity. I fully agree that the affidavit builds a strong probable cause case against Sam Stewart in Austin, but its staleness and lack of specificity as to appellant and her husband is glaring. The connection to the searched residence is simply non-existent.

Appellant's assessment of the "staleness" of the facts appearing in the affidavit is greatly bolstered by the omission of the crucial fact that on the day of the search, December 19, 1988, Mr. Bernard was in jail and had been for approximately two months. Such information is necessarily a critical factor for the magistrate who must evaluate the allegations of ongoing, continuing criminal activity and their connection, if any, to the apartment where Mr. Bernard had not lived for almost two months. That information is also important to the magistrate in determining the extent of the search and the degree of specificity necessary to identify property to be seized. There are no allegations in the affidavit that appellant, alone or with her incarcerated husband, continued to carry on any drug-related activities from the apartment. Indeed, there is nothing to tie appellant to any alleged ongoing, continuing illegal activity other than that she was arrested in 1986 and was married to Mr. Bernard. Probable cause allegations should be made of "sterner stuff."

The duty of a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed and that sufficient information was presented to allow him to make a fair determination. *Illinois v. Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332–33. When, as here, a defendant claims that the affidavit contains a material omission, the defendant must prove by a preponderance of the evidence that: (1) the omission was in fact made, and (2) it was made intentionally or with reckless disregard for the accuracy of the affidavit. If the defendant carries this burden, the reviewing court then determines whether the affidavit would establish probable cause for the search if the omitted material were included in the affidavit. If it does not, it becomes the appellate court's duty to void the warrant and suppress the evidence seized pursuant to it. *Melton v. State*, 750 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1988, no pet.) (citing *United States v. Martin*, 615 F.2d 318, 328 (5th Cir.1980)).

Agent Gallman testified at the suppression hearing that he knew at the time he sought the warrant that Mr. Bernard was in custody, and that he did not include the information in his affidavit. I cannot con-

ceive of, nor did the agent offer, any credible reason for omitting this important fact. Further, in my view, a common-sense reading of the twenty-page affidavit necessarily imposes the false impression that appellant and her husband were engaged in a present, ongoing, continuing criminal activity in the apartment to be searched, and that Mr. Bernard had resided there *at that time*. Therefore, a key justification presented to the magistrate for searching the apartment was that there was ongoing, continuing illegal activity at the apartment along with supporting records because it was Mr. Bernard's residence. The State relies on Agent Gallman's testimony that he may or may not have informed the magistrate that telephone calls had been made between the Houston apartment and Stewart's residence in Austin after Mr. Bernard was taken into custody. The inference from that possibility being that such information might have indicated to the magistrate that appellant was continuing the alleged narcotics enterprise in her husband's absence. However, this unsupported information was not included in the affidavit, and we cannot consider it in evaluating whether there was probable cause justifying the search. In evaluating probable cause, we are restricted to the four corners of the affidavit. For our purposes, what additional information the agent *might* have given the magistrate is no information at all and cannot be the basis for creating probable cause if it is otherwise lacking.

The majority alleges that the omission of information about Bernard's incarceration has not been properly shown by appellant to be material. It further suggests that our decision in *Melton v. State*, 750 S.W.2d 281 (Tex.App.—Houston [14th Dist.] 1988, no pet.), is at variance with the court of criminal appeals opinion in *Brooks v. State*, 642 S.W.2d 791 (Tex.Crim.App.1982), and reliance on *United States v. Park*, 531 F.2d 754 (5th Cir.1976), is inapplicable to the facts of this case. The gist of the majority's conclusion is that a material omission from a search warrant affidavit to vitiate the affidavit must have been made with a reckless disregard for the accuracy of the affidavit; that negligent omission alone will not undermine the affidavit. *United States v. Martin*, 615 F.2d 318, 329 (5th Cir.1980). As applied to our case, the majority reasons that appellant did not meet her burden of proof in that regard because she presented "absolutely no evidence as to the state of mind of Agent Gallman." I disagree with the majority's rigid limitation of the reasoning in these cases. If the majority is correct, the defendant's burden as to material omissions would be impossible to shoulder. It is unlikely that a narcotics agent is ever going to reveal that his state of mind in omitting a critical fact from a search warrant affidavit was one of "reckless disregard for the accuracy of the affidavit." To prove another's state of mind directly is, at best, difficult. Such proof necessarily consists of examining what occurred (or what was omitted) in the context of the circumstances. In the absence of an outright admission by the affiant, his or her state of mind or intent can only be inferred by reference to the omission and its impact if it had been included in the affidavit.

My reading of the affidavit in this case in which Agent Gallman repeatedly refers to appellant and her husband jointly being engaged in "ongoing and continuing involvement in the distribution of illegal controlled substances ..." leads me to conclude that it could have no other purpose than to suggest to the examining magistrate that there was presently illegal activity being conducted by the Bernards at the residence in question. Otherwise, why include their names and such allegations at all? The majority tells us the inclusion of their names is unnecessary because this is a federal search of a residence. If the majority is correct in this conclusion, it only makes the affidavit more suspect.

It is reasonable to ask why, if unnecessary, would a narcotics agent include the name of a suspected drug dealer already in jail for two months and another named person, who had no record of drug dealing, in a probable cause affidavit? Why would the agent repeatedly assert that these named individuals were engaged in ongo-

ing, illegal drug activities at the residence for which a search warrant is sought if it were unnecessary? And having included their names, why would he omit the fact that the suspected drug dealer had been in jail for two months at the time the search warrant for the residence was sought?

Under these circumstances, I conclude that the reason for the inclusion of these named parties with the ongoing drug involvement allegations was designed to shore up an inherently weak probable cause affidavit. I can discern no other reason for such inclusion. My conclusion is buttressed by the agent's failure to include the critical fact that his strongest suspect named had been in jail for two months and could not have been operating out of the residence sought to be searched. I say "critical fact," because Daniel Bernard was obviously the agent's best shot at obtaining a search warrant. Clearly, the puny evidence contained in the affidavit pertaining to Irene Bernard's ongoing drug activities amounts to virtually no evidence. The only possible basis the agent had for obtaining a search warrant then was the suspected drug activities of Daniel Bernard over a period of several years, in other places. Since there is no evidence connecting these suspected activities to the residence in question and since he had not even been in the residence for the preceding two months, the omission of this latter fact is, in my opinion, critical to the viability of the probable cause affidavit.

I conclude that the agent's failure to specifically inform the magistrate in the affidavit about Daniel Bernard's incarceration was misleading. This omission, when considered in the context of this inherently weak affidavit, as to any specific connection between the suspected drug activities, the residence, and appellant warrants a reasonable inference that such omission was made at least with a reckless disregard for the accuracy of the affidavit. No further proof should be required of appellant as to the impossible task of determining the agent's subjective state of mind other than to show, as appellant did here, that the omission occurred in the context of these critical facts. The burden should

then be placed squarely on the affiant to show why he omitted such a known critical fact from the affidavit and, thus, from the consideration of the neutral magistrate who must determine whether the personal residence can be searched.

The majority suggests that since only a residence is sought to be searched, it is hypertechnical to complain about the affidavit's failure to tie any drug activities or drug records to appellant. They ground this reasoning on the fact that under federal law it is not even necessary that the person in charge of the premises be named in the warrant. See *Wangrow v. United States*, 399 F.2d 106 (8th Cir.1968), *cert. denied*, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1969). Rather, they suggest that we should look at the affidavit in a common-sense manner as mandated by the United States Supreme Court in *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), and the Texas Court of Criminal Appeals in *Bower v. State*, 769 S.W.2d 887 (Tex.Crim.App.1989).

I view this matter from a different perspective. The Fourth Amendment provides that a person is protected in his home from unreasonable searches and seizures. Residences do not commit crimes, people do. To suggest that the government has the right to search a residence as if it existed in a vacuum without regard to the person who lives there is, to me, taking a hypertechnical approach to a fundamental personal protection provided by the Constitution. Unless there is some nexus between the residence and the persons committing the alleged crime, there can be no search. This conclusion is not inconsistent with *Wangrow* and other cases cited by the majority. In *Wangrow*, the police had the individuals under surveillance that were driving the automobiles that were ultimately impounded and searched under a warrant. The Court stated:

> A careful reading of the affidavit as a whole convinces us that the magistrate could reach no other conclusion than that the four men mentioned in the affidavit were Karzas and the appellants, and that the cars impounded by the police were

those which had been under surveillance and which probably contained the burglary tools.

*Wangrow v. United States,* 399 F.2d at 115.

*Wangrow* clearly had human occupants reasonably identifiable in the affidavit and who had been under surveillance; in other words, human beings connected to probable crime based on observation. Under those and other similar circumstances, it may not be necessary to name the person in charge of the premises in the warrant. But in the present case, there was no surveillance of appellant or the residence. Here, the officer not only named appellant in the affidavit but alleged, without viable evidence, that she was part of the alleged ongoing criminal activity which justified the search of her residence. I can see no purpose in such allegations other than to persuade the magistrate to approve the search. Having included her name in the affidavit with an insufficient allegation of criminal activity designed to support the search, then the State cannot now say it is irrelevant because technically she need not be named in the search warrant.

In summary, my review of the totality of the circumstances involved leads me to the conclusion that there is no probative evidence linking appellant to any ongoing illegal activity at the residence, and that information contained in the affidavit regarding Mr. Bernard omits the material fact that he was incarcerated approximately two months before the warrant was issued. While such an omission might not have been critical under all circumstances, under the facts of this case, it is. The affidavit refers to Mr. Bernard's past dealings, none of which are linked specifically to the residence in question or to appellant, while the whole tenor of the affidavit is that there is ongoing illegal activity at the residence *which Mr. Bernard no longer occupies.* The facts in the affidavit are constitutionally too stale to justify a search of the residence. They are insufficient to *presently* link appellant to any ongoing illegal activity or to records reflecting such activity. Under these circumstances, the omission of Mr. Bernard's incarceration was not only misleading, but critical to the viability of the warrant.

Given the deficiency in the affidavit, it necessarily follows that the warrant based thereon must also fall short of constitutional muster. Therefore, in my view, the trial court erred in overruling appellant's motion to suppress evidence seized from a purse in her kitchen cabinet pursuant to the warrant.

The State also contends that the evidence should be admissible under a "good faith" exception because the agents made the search under the authority of a warrant issued by a detached and neutral magistrate. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). A warrant issued by a magistrate normally suffices to establish the officers' good faith. *United States v. Ross,* 456 U.S. 798, 823 n. 32, 102 S.Ct. 2157, 2172 n. 32, 72 L.Ed.2d 572 (1982). Here, however, I would not uphold the search under a "good faith" exception when it was an agent relying on the warrant who failed to properly inform the magistrate of a critical fact for determining the existence of probable cause.

Because I find the trial court erred in denying appellant's motion to suppress, I would reverse the judgment and remand the cause to the trial court.