# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00732-CR

**Larry Don Johnson, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT NO. 9044100, HONORABLE MICHAEL J. MCCORMICK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Larry Don Johnson appeals his conviction of aggregated theft by deception and his convictions under the Texas Securities Act, consisting of offer and sale of securities without being registered as a dealer or agent and offer and sale of unregistered securities. *See* Tex. Pen. Code Ann. § 31.03 (West Supp. 2005); Tex. Rev. Civ. Stat. Ann. art. 581-29(A),(B) (West Supp. 2005). In two issues, he claims that the district court erred (1) in overruling his motion to suppress evidence seized from his workplace because the search warrant affidavit failed to establish probable cause, and (2) in refusing to grant his motion for new trial when the jury returned an ambiguous verdict concerning the aggregated value of property pertaining to the theft charge. Because we hold that the affidavit in support of the search warrant established probable cause and that refusal of Johnson's motion for a new trial was not an abuse of discretion, we affirm the district court's judgment.

**BACKGROUND**

Johnson's arrest and conviction stem from his role as an independent sales representative for the business entity known primarily as Paymentworks Inc.[1] Paymentworks first raised the suspicions of the Texas State Securities Board ("the Board") in July 2003 when an investigator spotted an advertisement in Forbes Magazine promising investors an unlikely 41 percent rate of return. The investigator called the listed number and received materials explaining the business opportunity. Investors could purchase cash-free ATMs[2] already placed in businesses and would receive, as monthly returns, a percentage of the ATM service charges. The investment required little or no effort after the initial purchase—investors would purchase the machines from Paymentworks, but Paymentworks would maintain them, interact with business owners, and relocate machines that were unproductive. In reality, Paymentworks was often selling the same ATMs to multiple investors, and money from the new purchases was being used to pay returns to the current investors.

After reviewing the investigator's findings, the Board's commissioner determined that the ATM program was a passive investment contract and therefore a security and that it was not registered. The commissioner issued an emergency cease and desist order against Paymentworks and its chairman, Dan Digman, on August 4, 2003. A Board attorney continued the investigation

---

[1] Paymentworks Inc. was a registered Texas corporation that also did business under the names Xpresspay and Infinite Payment. Because the record indicates that these names all relate to a single entity, we will refer to it as "Paymentworks" unless otherwise necessary.

[2] These are ATMs which do not contain actual currency. Instead of dispensing cash, they print out receipts listing the amount of money withdrawn. These receipts can then be used as cash or redeemed at the business in which the ATMs are located.

and applied for a warrant to search the Paymentworks offices on October 22, 2003. He submitted affidavits by himself and the investigator to the district court, and the district court approved the request for a warrant. On October 23, 2003, law enforcement and Board officials executed the warrant, searched the Paymentworks offices, and seized over 50 boxes of evidence.

Johnson began working as a sales representative for Paymentworks around October 1, 2002. His main function was to recruit investors to purchase the ATMs. To do this, Johnson purchased advertising for the program, conducted seminars for potential investors, and responded to his investors' complaints. Normally, Johnson would receive a 30 percent commission on the price of the total investment. He also managed other associates and received portions of their commissions. Records indicate that Johnson earned over $400,000 in commissions from October 1, 2002, to October 23, 2003.

Based on his participation in the Paymentworks business, Johnson was charged by a twelve-count indictment encompassing securities fraud, offering and selling securities without proper registration as a dealer or agent, offering and selling unregistered securities, and aggregated theft by deception. For enhancement purposes, the indictment also alleged final convictions of three prior felonies. Before trial, Johnson filed a motion to suppress evidence seized from the Paymentworks offices, asserting that the affidavits accompanying the warrant did not establish probable cause. After hearing argument, the district court ruled that Johnson lacked the requisite standing to challenge the search of the offices and admitted the evidence.

The district court entered directed verdicts of "not guilty" on counts 1, 2, and 7 and permitted the State to abandon a portion of the theft charge in count 12. The jury found Johnson

guilty on the remaining counts, and he pled true to the enhancement paragraphs. Johnson then filed a motion for new trial, contending that the jury's verdict was ambiguous about the dollar value attributed to the theft. The district court overruled this motion. Following the punishment proceedings, Johnson was sentenced to twenty years' imprisonment and assessed a fine of $10,000 for the aggregated theft conviction. This appeal followed.

## DISCUSSION

Johnson asserts two issues for review on appeal. First, he contends that the district court erred in refusing to grant his motion to suppress evidence seized from the Paymentworks offices. The district court denied Johnson's motion to suppress based on its finding that he lacked the requisite standing to challenge the search. On appeal, Johnson argues that he has standing to contest the sufficiency of the search warrant, that his motion to suppress should have been granted because the affidavits supporting the warrant did not establish probable cause, and that the error in denying his motion to suppress was not harmless. Second, he argues that the district court erred in refusing his motion for a new trial, contending that the jury's verdict is ambiguous and that the district court's acceptance of the verdict without alteration was an abuse of discretion.

**Motion to Suppress**

The district court's decision concerning the suppression of evidence is subject to a bifurcated review. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Appellate courts review the trial court's findings of historical fact with great deference, especially where the findings are based on determinations of credibility and demeanor. *Guzman v. State* 955 S.W.2d 85,

4

89 (Tex. Crim. App. 1997). If the resolution of a question of mixed law and fact ultimately depends on the determination of credibility and demeanor, it too deserves deference. *Id.* Mixed questions of law and fact that do not turn on credibility are reviewed *de novo*. *Id.* While the reviewing court is not required to give any deference to a legal ruling, "the trial court's legal ruling will be upheld if it is correct on any theory of the law applicable to the case." *Serrano v. State*, 123 S.W.3d 53, 58 (Tex. App.—Austin 2003, pet. ref'd) (citing *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990)).

*Standing*

A defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. *Kothe v. State,* 152 S.W.3d 54, 59 (Tex. Crim. App. 2004). The purpose of Article I, § 9 of the Texas Constitution is likewise "to safeguard an individual's legitimate expectation of privacy from unreasonable government intrusions." *Richardson v. State,* 865 S.W.2d 944, 948 (Tex. Crim. App. 1993) (en banc). In order for a defendant to establish that he had a legitimate expectation of privacy in the place invaded, he must "prove: (a) that by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable." *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (citing *Smith v. Maryland*, 442 U.S. 735, 740, (1979)); *Richardson,* 865 S.W.2d at 948-49. Questions concerning subjective belief may be questions of fact for the trial court to

determine, but the question of whether that subjective expectation is one that society would view as reasonable is a question of law. *Villarreal,* 935 S.W.2d at 138 n.5.

The Supreme Court has long held that the occupant of a business office may rely on the Fourth Amendment. *Mancussi v. Deforte*, 392 U.S. 368, 369 (1968). The issue does not depend on property rights but on whether the employee "had a reasonable expectation of freedom from governmental intrusion." *Id.* at 368. The *Mancussi* court found that a union official had standing to challenge the seizure of documents from an office he shared with several other employees. *Id.* at 369-70. The Supreme Court approved *Mancussi* in *O'Connor v. Ortega*, holding that an employee can have a reasonable expectation of privacy against government intrusion within the workplace context, even if he does not expect to be completely secure from his supervisor. *O'Connor v. Ortega,* 480 U.S. 717, 718 (1987). In *Ortega,* the Supreme Court specifically delineated the boundaries of a workplace to include "those areas and items that are related to work and are generally within the employer's control." *Id.* In this case, the two Paymentworks suites that were searched and all items that were seized were generally within Johnson's employer's control. Therefore, Johnson's expectation that they would be secure from unwarranted government intrusion was reasonable. We hold that Johnson had standing to challenge the seizure of files from the Paymentworks offices.

*Probable Cause*

Johnson contends that the information provided in the affidavit did not establish probable cause to believe that the evidence sought by law enforcement would be at the Paymentworks offices at the time of the search. He claims that the affidavit does not provide a

reasonable basis to infer that Paymentworks continued to operate until October 22, 2003, when the warrant was granted. Johnson asserts that the Board knew that Digman, Paymentworks' chairman and the Board's primary target, had previously been convicted for theft and fraud. The Board should therefore have suspected that Digman, a known criminal, was likely to either destroy the business records or move them from the Paymentworks offices once the cease and desist order issued on August 4, 2003. Thus, Johnson insists that it would be unreasonable to infer that there would be evidence at the offices almost three months after issuance of the cease and desist order. Because the affidavit relies on evidence obtained before issuance of the cease and desist order, Johnson contends that the information in the affidavit is stale. We disagree.

In order for a search warrant to be valid, it "must be supported by an affidavit setting forth substantial facts establishing probable cause." *State v. Delagarza,* 158 S.W.3d 25, 26 (Tex. App.—Austin 2005, no pet.); *see also* Tex. Code Crim. Proc. Ann. arts. 1.06, 18.01(b) (West 2005). Probable cause "exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986). Reviewing courts determine sufficiency by examining the facts within the four corners of an affidavit and evaluating those circumstances in their totality. *Illinois v. Gates,* 462 U.S. 213, 234 (1983); *Delagarza*, 158 S.W.3d at 26. In interpreting the affidavit, courts may make reasonable inferences from the facts and circumstances within the four corners. *Cassias*, 719 S.W.2d at 587-88. If it is found that the magistrate had a substantial basis for concluding that the search would yield the

evidence sought, then deference requires that reviewing courts uphold the authorizing warrant. *Gates,* 462 U.S. at 236; *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004).

The probable cause portion of the warrant application stated that in July 2003, a Board investigator reviewed a July issue of Forbes Magazine in which she saw an advertisement for an investment opportunity advertising a 41percent rate of return. She called the number listed and left her contact information. A Paymentworks representative soon contacted the investigator and offered her an opportunity to invest in cash-free ATMs. He indicated that the company offering the investment, Paymentworks, was located at 12110 Manchaca Road, Suite 103, in Austin, Texas. The representative also sent brochures concerning the program. The brochures indicated that Paymentworks did business under the name Xpresspay ATM and referenced the same Manchaca Road address. The materials named Dan Digman as Chairman of the Board of Paymentworks. The investigator reviewed the records of the Secretary of State of Texas and noted that Paymentworks was incorporated during May 2002. The representative contacted her on July 29 to persuade her to invest in the program.

On August 4, 2003, the Board's commissioner entered an emergency cease and desist order against Paymentworks, Xpresspay, and Digman, ordering all of them to cease and desist from acting as securities dealers in Texas until properly registered. The cease and desist order also instructed them to cease making materially misleading statements regarding securities.

In September or October 2003, a Board attorney conversed with an investor who had participated in the Paymentworks program. The investor discussed the program in detail and claimed not to have received several of his monthly payments. The investor gave the attorney a

8

newsletter he received from Paymentworks in August 2003. In addition to the Paymentworks and Xpresspay logos, the newsletter also featured a logo with the name "Infinite Payment." The newsletter referenced a telephone number and discussed both the ATM program and the cease and desist order. The Board attorney then accessed the Infinite Payment website, noting that it listed the business address as 12110 Manchaca Road, Suite 103, Austin, Texas, and that it provided the same telephone number as the Paymentworks newsletter.

On September 25, 2003, the Board attorney visited the building located at 12110 Manchaca Road. A sign above suite 102 displayed the name Paymentworks in large letters and Xpresspay ATM in smaller letters. A sign above the adjacent suite 103 displayed the name Xpresspay ATM. On October 2, 2003, the Board attorney again visited the location, noting that the sign above suite 103 had been changed from Xpresspay to Infinite Payment. On October 7, 2003, the Board attorney heard an advertisement for Infinite Payment on an Austin AM radio station. The advertisement listed a phone number for Infinite Payment that was the same phone number listed on the Paymentworks website. The Paymentworks and Infinite Payment websites also listed the same email address. On October 16, 2003, the Board attorney again visited the Manchaca location. He noted that the premises looked the same as on his October 2 visit.

Johnson notes correctly that the court expressed concern that the affidavits contained dated information. However, the trial court never resolved the issue. The proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued. *Hafford v. State,* 989 S.W.2d 439,

9

440 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). If facts included in the affidavit indicate business activity of a protracted and continuous nature, then the passage of time becomes less relevant. *Lockett v. State,* 879 S.W.2d 184, 189 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). Johnson argues that the cease and desist order would have alerted Digman to the investigation, increasing the likelihood that he would remove evidence from the business. However, several facts in the affidavit could lead the magistrate to infer that business activity continued. First, the August newsletter to the investor discussed the cease and desist order, indicating that the business would continue to function in defiance of it. Second, the websites were still functioning in September or October, and the Infinite Payment website listed the Manchaca Road address. Third, the Board attorney visited the Manchaca Road suites three times in late September and October, and each time he noted that signs displayed a combination of logos affiliated with Paymentworks. The Infinite Payment logo was added to the location sometime between September 25 and October 2, which further indicates that there was still business activity there. Finally, the radio advertisement on October 7 advertised Infinite Payment, indicating that the business was still actively recruiting investors. Considering that the affidavit recited facts indicating "activity of a protracted and continuous nature," these facts were sufficient to conclude that evidence would be present at that address. *See Lockett*, 879 S.W.2d at 189; *Bernard v. State*, 807 S.W.2d 359, 365 (Tex. App.—Houston [14th Dist.] 1991, no pet.).

Our task is only to determine if the issuing magistrate had a substantial basis for concluding that there was probable cause to search the Manchaca Road location, not to make that determination ourselves. *Delagarza*, 158 S.W.3d at 29. "The issuing magistrate's determination

10

of probable cause must be given great deference." *Id.* at 26. With this deference to the issuing magistrate in mind, we hold that the totality of the circumstances expressed in the affidavit provides a substantial basis from which the magistrate could have concluded that the evidence sought was at the location at the time the warrant was issued. *See Gates*, 462 U.S. at 234; *Delagarza*, 158 S.W.3d at 26. We therefore overrule Johnson's first issue. *See Serrano*, 123 S.W.3d at 58 (stating that a trial court's ruling on a motion to suppress shall be upheld if correct on any legal theory applicable to the case, regardless of which theory the trial court applied).

**Motion for New Trial**

In his second issue, Johnson asserts that the district court erred in refusing his motion for a new trial made after the verdict in the guilt or innocence phase of the trial. Johnson insists that the jury verdict is ambiguous. He claims that the aggregated dollar amount for the theft listed in the verdict could support convictions for distinct theft offenses with different ranges of punishment. He claims that the district court disregarded this ambiguity and assumed that the jury returned a conviction consistent with the charge submitted. Johnson further claims that it was beyond the district judge's authority to resolve the ambiguity and that, since it was not resolved by the jury, a new trial should have been granted.

Johnson argues that if a jury's verdict is unclear and supports multiple interpretations, then it should be resubmitted to them—the court may not substitute its own judgement for that of the jury. *See Eads v. State*, 598 S.W.2d 304, 307 (Tex. Crim. App. 1980); *Horn v. State* 35 S.W.2d 145, 145-47 (Tex. Crim. App. 1931).

11

The district court's charge listed Johnson's offense as theft by deception of an aggregated value of more than $20,000 but less than $100,000. However, when the jury returned their verdict, their final listed finding was for theft by deception of an aggregated value of more than $10,000 but less than $100,000. Johnson argues that the court should have resubmitted the question of aggregated value to the jury, since the jury's verdict supported both a state jail felony punishment range and a third degree felony punishment range. *Compare* Tex. Pen. Code Ann. § 31.03(e)(4)(A), *with* § 31.03(e)(5). The statute lists the value range for a state jail felony as more than $1,500 but less than $20,000, so Johnson's theft verdict could fit both offenses. In Johnson's view, the jury verdict was ambiguous. Thus, Johnson argues that it was error for the court to accept the verdict as a conviction for the offense charged. We disagree.

Both the granting and the denying of a motion for new trial rest within the discretion of the trial court, and appellate courts ordinarily will not reverse that decision unless the trial court has abused its discretion. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). "Verdicts should receive a liberal rather than a strict construction, and if the finding of the jury can be reasonably ascertained, from whatever source, the verdict should be held valid." *Ainsworth v. State*, 517 S.W.2d 274, 277 (Tex. Crim. App. 1975). In addition, the court of criminal appeals has held that "[a] jury verdict will be held to be sufficient if its meaning can be reasonably ascertained from the words used," and that surplusage in a jury verdict can be disregarded where the intent of the jury is clear. *Peterson v. State* 508 S.W.2d 844, 849 (Tex. Crim. App. 1974).

In reading the jury's entire verdict for the aggregated theft charge, we conclude that the ambiguity can be satisfactorily resolved. The findings of the jury are stated on the verdict form:

We, the jury, find the defendant, Larry Don Johnson, guilty of unlawfully appropriating . . . United States currency of the value identified below . . . with the intent to deprive the owners of property, from the following individuals:

Hanford Jones, . . . of a value of more than $1,500 but less than $20,000;

Cedric El-Amin, . . . of a value of more than $20,000 but less than $100,000;

Faheem Ansari, . . . of a value of more than $20,000 but less than $100,000;

Rajdeep Gupta, . . . of a value of more than $20,000 but less than $100,000;

and further, that the aggregate value of the property obtained was $10,000 or more but less than $100,000.

Reading the verdict as a whole, it is reasonable to conclude that the jury intended to find Johnson guilty of third-degree felony theft as alleged. While the verdict recites an aggregated value of $10,000 to $100,000, this does not contradict any of the jury's specific value findings, and it does not contradict the inference that the jury also believed the aggregated value to exceed $20,000. The findings relating to specific instances of the theft indicate an amount with an aggregate value of at least $61,500. Unless we disbelieve the jury's specific findings, it is reasonable to conclude that the jury believed Johnson to be guilty of theft with an aggregated value much greater than $20,000, but less than $100,000

Furthermore, the district court's charge clearly stated that Johnson was accused of theft with an aggregated value of $20,000 to $100,000. Under *Ainsworth*, the reviewing court should look to the charge given by the trial court in determining the jury's intentions. 517 S.W.2d at 277. In this case, the district court submitted a single theft charge with aggregated value of $20,000 to $100,000. The district court did not authorize a conviction for a lesser included offense. Therefore,

13

it is unreasonable to infer that the jury intended to find Johnson guilty of theft with an aggregated value of $10,000 to $20,000 when they were not charged with this task. This fact combined with the fact that the specific amounts listed by the jury add up to a value well above $20,000 makes the jury's intentions reasonably clear. The only reasonable interpretation is that the jury found Johnson guilty of the charged offense. The jury evidenced their intent by finding Johnson "guilty" and listing theft amounts totaling over $60,000. Since these statements are sufficient to determine the jury's intent, the final amount stated in the verdict may also be viewed as unnecessary surplusage under *Peterson*. 508 S.W.2d at 849.

Lastly, the verdict from the punishment phase of the trial clearly demonstrates the jury's intent. According section 3(c) of article 37.07 of the Texas Code of Criminal Procedure, "[i]f the jury finds the defendant guilty and the matter of punishment is referred to the jury, the verdict shall not be complete until a jury verdict has been rendered on both the guilt or innocence of the defendant and the amount of punishment." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(c) (West Supp. 2005). The punishment verdict is not ambiguous, for it clearly states that the jury found Johnson guilty of the theft with an aggregated value of $20,000 to $100,000. Based on the above, the only reasonable interpretation of the jury's earlier verdict is that they found Johnson guilty of the offense charged. Therefore, we hold that the district court did not abuse its discretion in rejecting Johnson's motion for a new trial.

**CONCLUSION**

Because we hold that the affidavit provided the issuing magistrate with a substantial basis to conclude that the search was supported by probable cause and that the district court did not

14

abuse its discretion in accepting the jury's verdict and denying Johnson's motion for new trial, we affirm the district court's judgment.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed

Filed:   July 7, 2006

Do Not Publish

15